UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILMER CHAVARRIA,<br><br>          Plaintiff,<br><br>          v.<br><br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY, et al.,<br><br>          Defendants. | Civil Action No. 25-4289 (DLF) |

**MOTION TO DISMISS AND**
**MEMORANDUM IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................. i

Table of Authorities .............................................................................................................. ii

Background ........................................................................................................................... 1

    I.      The Government's Authority To Conduct Border Searches ................................. 1

    II.    Plaintiff's Allegations In Support Of Declaratory And Injunctive Relief ............. 2

Legal Standards ..................................................................................................................... 4

    I.      Rule 12(b)(1) ....................................................................................................... 4

    II.    Rule 12(b)(6) ....................................................................................................... 5

Argument .............................................................................................................................. 7

    I.      This Court Does Not Have Jurisdiction Over Plaintiff's Claims .......................... 7

           A.    Plaintiff Does Not Have Standing To Seek Purely Equitable Relief .......... 7

           B.    Plaintiff Does Not Allege That ICE Injured Him And Therefore Lacks Standing .................................................................................................... 12

           C.    Plaintiff Lacks Standing Because The Requested Relief Would Not Redress The Alleged Injuries .................................................................... 13

           D.    Plaintiff's Claim Against CBP Is Moot ................................................... 14

    II.    Plaintiff Has Not Stated A Claim For Violation Of the Fourth Amendment ....... 15

    III.   Plaintiff Has Not Stated A Claim For Violation Of the Administrative Procedure Act .................................................................................................................... 21

Conclusion .......................................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Abdellatif v. DHS*,
109 F.4th 562 (D.C. Cir. 2024) ................................................................................ 16, 18

*Abidor v. Napolitano*,
990 F. Supp. 2d 260 (E.D.N.Y. 2013) .................................................... 9, 10, 11, 12

*Aboutalebi v. Dep't of State,*
Civ. A. No. 192605 (TJK), 2019 WL 6894046 (D.D.C. Dec. 18, 2019) ............................... 15

*Ahmed v. Kable,*
Civ. A. No. 21-3333 (TJK), 2023 WL 6215024 (D.D.C. Sept. 25, 2023) ........................... 17

*Alasaad v. Mayorkas*,
988 F.3d 8 (1st Cir. 2021) ....................................................................................... 19

*Anibowei v. Bondi,*
No. 24-11042, 2025 WL 3231720 (5th Cir. Nov. 19, 2025) .................................................. 19

*Anibowei v. Mayorkas,*
No. 3:16-CV-3495-D, 2024 WL 4887525 (N.D. Tex. Nov. 22, 2024) ................................. 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................. 5, 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 5, 6

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ................................................................................................... 8, 9

*Clayton v. District of Columbia*,
931 F.Supp.2d 192 (D.D.C. 2013) .............................................................................. 5

*Commodity Futures Trading Comm'n v. Nahas*,
738 F.2d 487 (D.C. Cir. 1984) .................................................................................... 5

*CREW v. Trump*,
438 F. Supp. 3d 54 (D.D.C. 2020) ............................................................................. 7

*Curran v. Holder*,
626 F. Supp. 2d 30 (D.D.C. 2009) ............................................................................. 4

*Eccles v. Peoples Bank of Lakewood Vill.*,
333 U.S. 426 (1948) ................................................................................................. 10, 11

*Franklin v. Massachusetts*,
505 U.S. 788–03 (1992) ............................................................................................. 7

*Garcia v. Vilsack*,
  563 F.3d 519 (D.C. Cir. 2009) ........................................................................... 21

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
  185 F. Supp. 2d 9–14 (D.D.C. 2001) ..................................................................... 5

*Jibril v. Mayorkas*,
  20 F.4th 804 (D.C. Cir. 2021) .......................................................................... 8, 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ....................................................................................... 5

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
  507 U.S. 163 (1993) ....................................................................................... 5

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992) .................................................................................. 7, 13

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ...................................................................................... 8, 9

*Nat'l Petrochemical & Refiners Ass'n v. E.P.A.*,
  287 F.3d 1130 (D.C. Cir. 2002) .......................................................................... 7

*Nine Iraqi Allies v. Kerry*,
  168 F. Supp. 3d 268 (D.D.C. 2016) ..................................................................... 15

*Papasan v. Allain*,
  478 U.S. 265 (1986) ....................................................................................... 6

*Penn v. Blinken*,
  Civ. A. No. 21-1055 (TJK), 2022 WL 910525 (D.D.C. Mar. 29, 2022) .............................. 15

*Raines v. Byrd*,
  521 U.S. 811–20 (1997) ................................................................................... 7

*Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Human Servs.*,
  396 F.3d 1265 (D.C. Cir. 2005) ......................................................................... 21

*Sayad v. Dep't of Homeland Sec.*,
  Civ. A. No. 20-2333 (TSC), 2022 WL 4130840 (D.D.C. Sept. 12, 2022) ........................... 15

*Scenic Am., Inc. v. Dep't of Transp.*,
  836 F.3d 42 (D.C. Cir. 2016) ........................................................................ 13-14

*Stilwell v. Off. of Thrift Supervision*,
  569 F.3d 514 (D.C. Cir. 2009) ......................................................................... 13

*Swan v. Clinton*,
  100 F.3d 973–81 (D.C. Cir. 1996) ....................................................................... 8

*United States v. Arnold,*
  533 F.3d 1003 (9th Cir. 2008) ........................................................................... 14

*United States v. Cano,*
  934 F.3d 1002 (9th Cir. 2019) ........................................................................... 19

*United States v. Castillo,*
  70 F.4th 894 (5th Cir. 2023) .............................................................................. 18

*United States v. Flores-Montano,*
  541 U.S. 149 (2004) ........................................................................... 1, 14, 16, 17

*United States v. Ickes,*
  393 F.3d 501–07 (4th Cir. 2005) .................................................................. 10, 19

*United States v. Kolsuz,*
  890 F.3d 133  (4th Cir. 2018) ............................................................................ 19

*United States v. McAuley,*
  563 F. Supp. 2d 672 (W.D. Tex. 2008) .............................................................. 14

*United States v. Mendez,*
  103 F.4th 1303 (7th Cir. 2024) .......................................................................... 19

*United States v. Montoya de Hernandez,*
  473 U.S. 531 (1985) ..................................................................................... 15, 16

*United States v. Pickett,*
  598 F.3d 231 (5th Cir. 2010) ............................................................................. 14

*United States v. Pulido,*
  133 F.4th 1256 (11th Cir. 2025) ................................................................... 19-20

*United States v. Sandler,*
  644 F.2d 1163–68 (5th Cir. 1981) ..................................................................... 17

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,*
  454 U.S. 464 (1982) ............................................................................................ 7

*Warth v. Seldin,*
  422 U.S. 490 (1975) ............................................................................................ 7

**Statutes and Regulations**

5 U.S.C. § 704 ............................................................................................... 21, 22
5 U.S.C. § 706 ................................................................................................. 4, 21
6 U.S.C. § 211 ..................................................................................................... 12
6 U.S.C. §§ 202 ..................................................................................................... 2
6 U.S.C. §§ 202, 211 ......................................................................................... 2, 3

28 U.S.C. § 2201 ................................................................................................................... 4

28 U.S.C. § 2202 ................................................................................................................... 4

Defendants Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), Immigration and Customs Enforcement ("ICE"), the Secretary of Homeland Security ("Secretary"), the CBP Commissioner, and the Senior Official Performing the Duties of ICE Director ("Defendants"), respectfully move to dismiss the complaint filed by Plaintiff Wilmer Chavarria (ECF No. 1) pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(2).

**BACKGROUND**[1]

### I.     The Government's Authority To Conduct Border Searches

"[T]he United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity." *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004). "The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border. Time and again, we have stated that 'searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.'" *Id*. at 152–53 (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)).

This border-search power of the government has an "impressive historical pedigree," with the First Congress having authorized a wide range of border-search activities. *Id*. at 153. Today it is DHS, principally through its component agencies CBP and ICE, that is the first line of defense at the border. DHS and CBP have responsibility for administering the customs and immigration laws of the United States, securing the borders, and inspecting individuals and items that seek entry

---

[1]     Unless otherwise noted, the following alleged facts drawn from the Complaint are accepted as true solely for the purposes of this motion.

into the United States.  *See* 6 U.S.C. §§ 202, 211.  These responsibilities include "[p]reventing the entry of terrorists and the instruments of terrorism into the United States," *id.* §§ 202(1), as well as enforcing hundreds of laws and regulations, including those respecting immigration, currency and financial transactions, customs, commerce and trade, copyrights and trademarks, narcotics, the safety of agricultural products and other goods, and import and export controls on wildlife and plants, chemical and biological weapons, guns, and other items.  *See generally* Summary of Laws Enforced by CBP, https://www.cbp.gov/trade/rulings/summary-laws-enforced/us-code (published Mar. 8, 2014) (last visited April 21, 2026).

## II.    Plaintiff's Allegations In Support Of Declaratory And Injunctive Relief

Plaintiff is a naturalized citizen who has family members residing in Nicaragua.  Compl. (ECF No. 1) ¶¶ 1-2.  On July 21, 2025, upon returning home from a trip to Nicaragua, Plaintiff was detained by "government agents" at the George Bush Intercontinental Airport in Houston.  *Id.* ¶ 3.  Plaintiff was separated from his husband and taken to an isolated secondary screening area, where he was asked to hand over his laptop, smartphone, and tablet ("Devices"), along with his passwords.  *Id.* ¶ 4.  After initially declining to provide the requested items and information, Plaintiff complied with the request.  *Id.* ¶ 5.  Plaintiff alleges that government agents searched his Devices, mainly out of his presence,[2] and that he does not know what media or data was viewed or exported.  *Id.* ¶ 6.  Plaintiff does not specifically allege that any data was exported from the Devices.  *See generally*, *id.*  The officers returned Plaintiff's Devices to him and allowed him to leave.  *Id.*

---

[2]    Plaintiff alleges that an agent did open and scroll through one of Plaintiff's cellphone apps in his presence, "but only because it could not be opened without facial recognition."  *Id.* ¶ 6, n.1.

As a school superintendent, Plaintiff was concerned about the agents accessing student data on his devices. *Id.* ¶¶ 5-6. The July 21, 2025, incident was the first time in fifteen years of international travel that Plaintiff had been detained for anything beyond a brief check of his legal status. *Id.* ¶ 3. Plaintiff alleges further that he made a subsequent trip to Nicaragua in October 2025, but does not allege that he was searched at a port of entry in connection with that trip. *Id.* ¶ 45.

Plaintiff alleges that the search of his Devices was authorized by CBP's 2018 directive 3340-049A, "Border Searches of Electronic Device" ("CBP Directive"). Compl. (ECF No. 1) ¶¶ 19-27. Plaintiff alleges that "CBP Directive § 2.7 contemplates 'conveyance to ICE' of both devices and information or media contained thereon, and states that 'conveyance to ICE is not limited by the terms of this Directive, and ICE policy will apply upon receipt by ICE.'" *Id.* ¶ 27. The Complaint also identifies a 2009 ICE Directive "Border Searches of Electronic Devices," "which also authorizes warrantless searches of the type Plaintiff experienced and now challenges." *Id.* ¶ 28.

Plaintiff alleges that "CBP's and ICE's policies, embodied in these agencies' directives, threaten [Plaintiff] with unreasonable, warrantless searches or seizures whenever he travels internationally, as the policies permit suspicionless 'Basic Searches' of electronic devices and, at best, require only reasonable suspicion and agency supervisor approval-a low bar to meet-for 'Advanced Searches.'" Compl. (ECF No. 1) ¶ 43. Plaintiff goes on to allege that "[a]s a consequence of the CBP and ICE Directives, and the increasing frequency with which warrantless searches of electronic devices are conducted at the border, [he] faces the choice of either (1) continuing to carry his devices with him when he travels and risk again being subjected to warrantless, suspicionless searches or seizures of his electronic devices and their contents

whenever he passes through a border zone or point of entry, or (2) not carrying his devices with him when he travels, and losing their functionality for both personal and professional purposes-including his ability to remain connected with his friends, family, and colleagues." *Id.* ¶ 44. Plaintiff alleges further that "[o]n a subsequent visit to Nicaragua in October 2025, [he] traveled without his laptop to avoid an encounter with government agents like that he had experienced in July 2025," and was therefore "unable to work remotely while visiting his family." *Id.* ¶ 45.

The Complaint alleges that CBP and ICE Directives are contrary to the Fourth Amendment and claims that this makes them contrary to law and subject to vacatur pursuant to 5 U.S.C. § 706(2)(B), a portion of the Administrative Procedure Act ("APA"). Compl. (ECF No. 1) ¶¶ 49-51. In addition to attorney's fees, Plaintiff seeks the following relief:

> A declaratory judgment, pursuant to 28 U.S.C. § 2201, holding CBP's and ICE's policies authorizing warrantless, suspicionless searches of U.S. citizens' electronic devices, embodied in the CBP and ICE Directives, and associated promulgating and implementing materials issued by the agencies, unconstitutional;

> An order, pursuant to 5 U.S.C. § 706(2), holding unlawful and setting aside the CBP Directive and the ICE Directive;

> An injunction, pursuant to 28 U.S.C. § 2202, Federal Rule of Procedure 65, and the Court's inherent equitable powers, prohibiting Defendants from performing warrantless searches of Plaintiff's electronic devices;

Compl. (ECF No. 1) at Prayer for Relief.

## LEGAL STANDARDS

### I.    Rule 12(b)(1)

Federal Rule of Civil Procedure ("Rule") 12(b)(1) requires dismissal of claims where the Court "lack[s] jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "Rule 12(b)(1) presents a threshold challenge to the Court's jurisdiction . . . [and] the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "A federal court

presumptively lacks jurisdiction in a proceeding until a party demonstrates that jurisdiction exists." *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 n.9 (D.C. Cir. 1984) (emphasis added); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction."). "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F.Supp.2d 192, 200 (D.D.C. 2013) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

While the Court is required to accept as true all of the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), because the plaintiff has the burden of establishing the Court's jurisdiction, the "plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (citation and internal quotation marks omitted). This scrutiny permits the Court to consider material outside of the pleadings in its effort to determine whether it has jurisdiction. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 n. 3 (D.C. Cir. 1997).

## II.    <u>Rule 12(b)(6)</u>

Under Rule 12(b)(6), the Court may dismiss a complaint where a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss pursuant to

Rule 12(b)(6), the pleadings are construed broadly so that all facts pled therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 678. However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677. The pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.* at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557.

- 6 -

**ARGUMENT**

**I.    This Court Does Not Have Jurisdiction Over Plaintiff's Claims**

**A.    Plaintiff Does Not Have Standing To Seek Purely Equitable Relief**

The standing doctrine addresses the question of who may properly bring suit in federal court, and "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The "irreducible constitutional minimum" of standing requires a plaintiff to show (1) a concrete and particularized injury in fact which is actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury will likely be redressed by a favorable decision. *Defenders of Wildlife,* 504 U.S. at 560. And "[b]eyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982); *Nat'l Petrochemical & Refiners Ass'n v. E.P.A.*, 287 F.3d 1130, 1147 (D.C. Cir. 2002) ("To demonstrate prudential standing, [Plaintiff] must show that the interest it seeks to protect is arguably within the zone of interests to be protected or regulated by the statute . . . in question.") (cleaned up) (citations omitted). The law of standing is built on separation-of-powers principles and, as such, the standing inquiry is "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997).

If a court lacks the authority to grant the injunctive relief requested, then a plaintiff's injuries are not redressable, and he therefore lacks standing. *See CREW v. Trump*, 438 F. Supp. 3d 54, 69 n.14 (D.D.C. 2020) (citing *Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992) and

*Swan v. Clinton*, 100 F.3d 973, 980–81 (D.C. Cir. 1996)). And "to obtain forward-looking relief," plaintiffs "must establish a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them." *Murthy v. Missouri*, 603 U.S. 43, 45 (2024); *see also Jibril v. Mayorkas*, 20 F.4th 804, 814 (D.C. Cir. 2021).

Here, Plaintiff seeks equitable relief—a declaratory judgment and permanent injunction—under a premise that the government violated the Fourth Amendment by searching his Devices at the border. Compl. (ECF No. 1) ¶¶ 46-51. However, any concrete injury alleged by Plaintiff occurred at the time of the search. Any allegations in the Complaint regarding additional purported injuries (e.g. fears regarding the safety of student data or concerns regarding future travel) are speculative and do not establish that Plaintiff will be subject to similar searches in the future. Because Plaintiff has not plausibly alleged that he has an ongoing injury or "real and immediate threat of future injury" in connection with the challenged policies, Plaintiff lacks standing to seek the requested declaratory and injunctive relief. *Murthy*, 603 U.S. at 58, 76.

For example, in *City of Los Angeles v. Lyons*, 461 U.S. 95, 98 (1983), the Supreme Court considered whether a plaintiff who had been subjected to a chokehold by police had standing to seek equitable relief in the form of (i) a declaration that the use of such chokeholds violated the Constitution and (ii) an injunction against their future use. The Court explained that the plaintiff would have standing only if he could show that he "would again be stopped for a traffic or other violation in the reasonably near future" and "that strangleholds are applied by the Los Angeles police to every citizen who is stopped or arrested regardless of the conduct of the person stopped." *Id*. at 108. Noting that the plaintiff did not claim to have been subjected to a chokehold on any other occasion, the Court found that the "odds" of a repeat occurrence of the allegedly illegal conduct were not "sufficient to make out a federal case for equitable relief." *Id*.

- 8 -

The same is true with respect to Plaintiff's suit challenging the allegedly unconstitutional search of his Devices. Plaintiff's Complaint details that he has traveled internationally on numerous occasions and does not indicate having been previously searched by government officers when being processed through customs. *See* Compl. (ECF No. 1) ¶¶ 3, 45. In fact, Plaintiff alleges that his Devices were searched on only a single occasion. *Id.* ¶¶ 4-6. Having failed to plausibly allege reoccurring injuries, Plaintiff lacks standing for the equitable relief he seeks. *See Murthy*, 603 U.S. at 69 (finding that plaintiffs had not established likelihood of standing sufficient for a preliminary injunction where, "without proof of an *ongoing* pressure campaign" by Defendants against platforms, "it is entirely speculative that the platforms' future moderation decisions will be attributable, even in part, to the defendants."); *Jibril*, 20 F.4th at 812 ("[B]ecause the *Jibrils* do not plausibly allege that these alleged violations will recur, Appellants fail to establish any imminent injuries with respect to these purported policy violations.").

Indeed, a similarly situated plaintiff was found to lack standing to pursue litigation arising out of a border search in *Abidor v. Napolitano*, 990 F. Supp. 2d 260 (E.D.N.Y. 2013). In that case, the plaintiff had his cell phones and other electronic devices searched by a customs officer when returning to the United States from abroad. *Id.* at 267–68. The plaintiff later sued various government officials seeking purely equitable relief, including a declaration that his rights had been violated and an injunction against copying the information from his devices and for the expungement of the information from the government's possession. *Id.* at 264, 275.

In dismissing the plaintiff's claims for lack of standing, the court in *Abidor* employed reasoning that is equally applicable to Plaintiff's Complaint. The court took judicial notice of the fact that "there is less than a one in a million chance that a computer carried by an inbound international traveler will be detained" at customs when a traveler is entering the United States.

*Id.* at 271; *see also United States v. Ickes*, 393 F.3d 501, 506–07 (4th Cir. 2005) (rejecting as "far-fetched" the suggestion that "any person carrying a laptop computer . . . on an international flight would be subject to a search of the files on the computer hard drive[,]" because "[c]ustoms agents have neither the time nor the resources to search the contents of every computer"). Given these low odds of a future search occurring, there was at most only an "alleged injury based on speculation as to conduct which may or may not occur at some unspecified future date," which was insufficient to support an action in federal court. *Abidor*, 990 F. Supp. 2d at 272. The court also noted that the plaintiff had frequently traveled internationally and had been stopped at the border on other occasions, but that his electronic devices had been searched only once. *Id.* at 274–75. The same is true of Plaintiff here, according to his own allegations. Compl. (ECF No. 1) ¶¶ 3, 45. For all the same reasons that the similarly situated plaintiff lacked standing in the *Abidor* case, Plaintiff lacks standing in this case in which he seeks essentially the same type of equitable relief.

Moreover, even if it were assumed that Plaintiff could establish Article III standing, dismissal would still be warranted for closely related prudential reasons. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest. It is always the duty of a court of equity to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief." *Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426, 431 (1948) (citations omitted). Thus, "[e]specially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative." *Id.*; *see also Abidor*, 990 F. Supp. 2d at 274 ("'The Supreme Court has frequently, although not invariably, indicated a marked reluctance to have

- 10 -

important issues of public law resolved by declaratory judgments.'" (quoting 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2762 (3d ed. 1998)).

Plaintiff essentially seeks a judgment from this Court that the Constitution requires the government to have reasonable suspicion (or more) before undertaking the search of an electronic device at the border. *See* Compl. (ECF No. 1) ¶¶ 46-51 & Prayer. However, as discussed in more detail below, the Supreme Court has never recognized such a requirement. Plaintiff therefore cannot show a "clear" need for the relief he seeks, *Eccles*, 333 U.S. at 431, and indeed it would represent a marked departure from the longstanding principles that the government's border-search authority is broad and that border searches are reasonable simply by virtue of the fact that they occur at the border. Furthermore, while it is conceivable that in some instances it might become absolutely necessary and unavoidable for a court to address the legality of a border search (such as in a criminal prosecution where the defendant's freedom may hinge on whether evidence discovered during a border search of an electronic device is admitted into evidence or instead suppressed), Plaintiff's complaint does not present such a case. *See Abidor*, 990 F. Supp. 2d at 272 (contrasting a claim for a declaratory judgment regarding the legality of a border search, for which standing was lacking, with that same issue being raised in a criminal case in the context of a motion to suppress).

In addition, as the *Abidor* court noted, declining to exercise discretionary equitable jurisdiction over a suit like Plaintiff's has the added benefit of affording Congress and the relevant Executive Branch agencies the first opportunity to "respond to any abuses that should develop as a consequence" of government policies providing for border searches of electronic devices. *Id*. at 274. As the current CBP border-search policy makes clear, "CBP will protect the rights of individuals against unreasonable search and seizure and ensure privacy protections while

accomplishing its enforcement mission."[3]  Congress is likewise aware that electronic devices are subject to being searched at the border, but has not seen fit to withdraw or modify the broad search authority that it has consistently granted to government officers at the border for well over 200 years (including at the time the Fourth Amendment was adopted).  *See Abidor*, 990 F. Supp. 2d at 274 (referencing a Congressional report on border searches of electronic devices); *see also Trade Facilitation and Trade Enforcement Act of 2015*, Pub. L. 114-125, at § 802 (Feb. 24, 2016), *codified* at 6 U.S.C. § 211(k)(1)(A) (directing CBP to establish "standard operating procedures for searching, reviewing, retaining, and sharing information contained in communication, electronic, and digital devices encounters by [CBP] personnel at United States ports of entry").

In sum, under the Article III case-or-controversy requirement, Plaintiff's complaint is subject to dismissal for lack of standing.

### B.    Plaintiff Does Not Allege That ICE Injured Him And Therefore Lacks Standing

Plaintiff also does not plausibly allege that any ICE agents caused him any injury, much less one that would be redressable by recission of the challenged ICE policy.  The only allegations in the Complaint specific to ICE are (a) that "[i]t is responsible for policies and procedures governing the conduct of ICE Special Agents, including those challenged here[,]" Compl. (ECF No. 1) ¶ 15, (b) that "CBP Directive § 2.7 contemplates 'conveyance to ICE,' of both devices and information or media contained thereon, and states that 'conveyance to ICE is not limited by the terms of this Directive, and ICE policy will apply upon receipt by ICE[,]" *id.* ¶ 27, and (c) that ICE Directive "also authorizes warrantless searches of the type Plaintiff experienced and now

---

[3]    On January 1, 2026, CBP adopted a new policy, "Border Search of Electronic Devices," available        at        https://www.cbp.gov/sites/default/files/2026-01/cbp_directive_3340-049b_jan_2026_508.pdf (last visited April 21, 2026).

challenges[,]" but does not differentiate between basic and advanced searches, *id.* ¶¶ 28-29. Plaintiff specifically states that "it is not yet known whether ICE Special Agents were involved in [Plaintiff's] July 2025 detention and search of his devices[.]" *Id.* at 8 n.2. More importantly, the Plaintiff fully admits that during the alleged search an "individual wearing a CBP badge and introduced… as a supervisor gave Wilmer to read" a CBP brochure entitled "Boarder Searches of Electronic Devices Tear Sheet." *Id.* at ¶ 26. Stated differently, the Plaintiff does not allege any facts that ICE was involved in the alleged search.

Such allegations are insufficient to meet Plaintiff's burden of alleging a concrete and particularized injury in fact which is actual or imminent, not conjectural or hypothetical. *Defenders of Wildlife,* 504 U.S. at 560; *Stilwell v. Off. of Thrift Supervision*, 569 F.3d 514, 518 (D.C. Cir. 2009).

Plaintiff's claims against ICE should be dismissed for lack of standing for failure to plead a cognizable injury.

C.    **Plaintiff Lacks Standing Because The Requested Relief Would Not Redress The Alleged Injuries**

The party invoking federal jurisdiction bears the burden of establishing these elements of standing, i.e., injury-in-fact, causation, and redressability. *See Stilwell*, 569 F.3d at 518. Moreover, because they are not merely pleading requirements, but "rather an indispensable part of the plaintiff['s] case," *Defenders of Wildlife,* 504 U.S. 561, each element must be supported in the same manner as any other issue on which the plaintiffs bear the burden of proof. *See id.* Here, Plaintiff has not demonstrated that it is "likely, as opposed to merely speculative, that the [alleged] injury will be redressed by a favorable decision." *Defenders of Wildlife,* 504 U.S. at 561. A plaintiff cannot make this required showing when the record fails to establish that a plaintiff's requested relief would result in a different outcome. *Scenic Am., Inc. v. Dep't of Transp.*, 836 F.3d

- 13 -

42, 50-53 (D.C. Cir. 2016) (holding that the court would not rely on outcomes that were "'speculative,' rather than 'likely'" and that, based upon the evidence before the court, vacating guidance was unlikely to redress plaintiff's injuries).

Even if Plaintiff were to prevail on the merits and the Court was inclined to enjoin or vacate CBP's or ICE's policies on electronic device border searches (which it should not), the injury to which Plaintiff alludes (which appears to be the possibility for warrantless searches of Plaintiff's devices at the border) would not be redressed because the CBP and ICE directives at issue are not the source of the government's authority to perform such searches.  The government's authority to perform border searches of electronic devices was not created by either of the policies at issue. Congress granted the Executive Branch the authority "to conduct routine searches and seizures at the border, without probable cause or a warrant, since the beginning of our Government." *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004).  In fact, the government conducted border searches of electronic devices before the issuance of the current policy (the first policy was issued in 2009).  *See, e.g.*, *United States v. Pickett*, 598 F.3d 231, 233-35 (5th Cir. 2010) (arising out of 2007 border search of thumb drives, portable hard drives, and laptop memory card); *United States v. Arnold*, 533 F.3d 1003, 1005, 1008 (9th Cir. 2008) (arising out of 2005 border search of laptop, separate hard drive, flash drive, and six CDs); *United States v. McAuley*, 563 F. Supp. 2d 672, 673-74, 677 (W.D. Tex. 2008) (arising out of a border search of laptop and hard drives in 2007).

Because the remedies that Plaintiff requests would not remedy his alleged injuries, the Complaint should be dismissed for lack of standing.

### D.    Plaintiff's Claim Against CBP Is Moot

On January 1, 2026, CBP adopted a new policy, "Border Search of Electronic Devices," available        at        https://www.cbp.gov/sites/default/files/2026-01/cbp_directive_3340-049b_jan_2026_508.pdf (last visited April 21, 2026).  This policy superseded the 2018 CBP

- 14 -

directive operative at the time of the Plaintiff's search, though both the 2018 and 2026 CBP Directives allow searches of devices without probable cause or a warrant.

As a result, this case is now moot as to the claim against CBP because "there is no live controversy before this Court." *Sayad v. Dep't of Homeland Sec.*, Civ. A. No. 20-2333 (TSC), 2022 WL 4130840, at *2 (D.D.C. Sept. 12, 2022) (dismissing visa mandamus case as moot when a consular officer issued a final decision on the relevant visa application); *Aboutalebi v. Dep't of State*, Civ. A. No. 19-2605 (TJK), 2019 WL 6894046, at *2 (D.D.C. Dec. 18, 2019) (same); *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 277-78 (D.D.C. 2016) (dismissing visa mandamus claims of those plaintiffs that had been issued as moot); *see also Penn v. Blinken*, Civ. A. No. 21-1055 (TJK), 2022 WL 910525, at *3 (D.D.C. Mar. 29, 2022) (dismissing as moot "all claims asserted by the foreign plaintiffs whose visa applications have already been adjudicated").

Because the Court's jurisdiction under the Constitution extends only to actual, ongoing controversies, the Court is precluded from deciding cases where the issues presented are no longer live. *Sayad*, 2022 WL 4130840, at *2. Here, because the policy that Plaintiff seeks to enjoin is no longer operative, there no longer remains a live controversy, and the Court can grant no meaningful relief. *Id.* Accordingly, the Court should dismiss this case against CBP for a lack of jurisdiction under Rule 12(b)(1).[4]

## II.    Plaintiff Has Not Stated A Claim For Violation Of the Fourth Amendment

Plaintiff's allegations that the search of his Devices at the border violated the Fourth Amendment fail to state any claim for relief. The Fourth Amendment requires only "that searches and seizures be reasonable." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985).

---

[4]    The 2009 ICE Directive challenged in the Complaint was also affected by guidance issued in 2018. *See Anibowei v. Mayorkas*, No. 3:16-CV-3495-D (N.D. Tex. Nov. 22, 2024), ECF No. 125.

Though Plaintiff does not expressly explain why the searches of his Devices were unreasonable, a generous reading of the Complaint is that he is alleging the government lacked reasonable suspicion to believe that his Devices contained evidence of any crime respecting customs, immigration, or terrorism.  Compl. (ECF No. 1) ¶¶ 43, 49-50.

But "the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior." *Montoya de Hernandez*, 473 U.S. at 538; *see also Abdellatif v. DHS*, 109 F.4th 562, 572-73 (D.C. Cir. 2024) (discussing the reduced threshold for conducting searches at the border in the context of Fourth Amendment challenge to petitioner's alleged status on a TSA watchlist).  "[T]he United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity." *Flores-Montano*, 541 U.S. at 153.  Indeed, the Supreme Court has stressed that "[t]he Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border." *Id*. at 152.  For this reason, it has long been acknowledged that "'searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.'" *Id.* at 152–53 (quoting *Ramsey*, 431 U.S. at 616). Indeed, the border-search doctrine, which permits suspicionless searches of those persons and things crossing the border, has a history as old as the Fourth Amendment itself.  *See id.* at 153 (citing a statute authorizing border searches passed by the First Congress, and explaining that the government's authority to conduct warrantless searches at the border has an "impressive historical pedigree").

As the Supreme Court has held, "[r]outine searches of the persons and effects of entrants [into the United States] are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *Montoya de Hernandez*, 473 U.S. at 538.  The only exception the Court has suggested

- 16 -

exists is for a narrow category of *personal* searches—"such as strip, body-cavity, or involuntary x-ray searches"—that are considered non-routine and for which reasonable suspicion may be required. *Flores-Montano*, 541 U.S. at 152 (quoting *Montoya de Hernandez*, 473 U.S. at 541 n.4); *see also Ahmed v. Kable*, Civ. A. No. 21-3333 (TJK), 2023 WL 6215024, at *16 (D.D.C. Sept. 25, 2023) ("[Search alleged by plaintiff] pales in comparison to the types the Supreme Court has identified as nonroutine: "strip, body cavity, or involuntary x-ray searches" and prolonged detention in hopes of forcing a traveler to reveal contraband smuggled "in her alimentary canal.")(citing *Montoya de Hernandez*); *United States v. Sandler*, 644 F.2d 1163, 1167–68 (5th Cir. 1981) (explaining that while reasonable suspicion may be required for strip searches or body-cavity searches at the border, it is not required for less intrusive personal searches such as patdowns or frisks).

Plaintiff has not alleged that he was subjected to any such search, and, notably, the Supreme Court has rejected the attempt to extend the reasonable-suspicion requirement beyond the category of "highly intrusive searches of the person." *Flores-Montano*, 541 U.S. at 152. In *Flores-Montano*, customs officers removed and dismantled the gas tank of a car entering the country, leading to the discovery of narcotics inside. *Id.* at 150–51. Reversing a decision of the Ninth Circuit, which had held that such a search required reasonable suspicion under a theory that it went beyond a "routine" search, the Supreme Court explained that "[c]omplex balancing tests to determine what is a 'routine' search of a vehicle, as opposed to a more 'intrusive' search of a person, have no place in border searches of vehicles." *Id.* at 152. Plaintiff also does not allege that any advanced forensic search of his Devices or exporting of information or data occurred. *See generally*, Compl. (ECF No. 1). He alleges only that he does not know whether data was exported. *Id.* ¶ 6.

- 17 -

The D.C. Circuit and district courts in this Circuit (which does not contain a port of entry) do not appear to have considered this issue specifically. However, the D.C. Circuit has addressed the issue of border searches generally in connection with its dismissal of a challenge to the Transportation Security Administration's ("TSA") treatment of a petition by a traveler who suspected that he was on a TSA watchlist. *Abdellatif*, 109 F.4th 562. In rejecting the petitioners' Fourth Amendment claims (which were not plead in much detail), the appeals court discussed border searches and *Montoya de Hernandez* and stated that "[r]outine searches at the border, absent suspicion, thus are permissible 'simply by virtue of the fact that they occur at the border.'" *Abdellatif*, 109 F.4th at 572 (citation omitted). The court went on to find that "[w]hile not every border search or seizure fits within that rubric, nothing in petitioners' unspecific allegations that they have experienced secondary inspections, even ones lasting more than an hour, causes us to question the application of the general principle here." *Id.*[5]

Courts within other circuits have considered questions similar to the ones raised by Plaintiff here. The Fifth Circuit, where the alleged search occurred, has held that the government can conduct routine, manual cell phone searches at the border without reasonable suspicion. *United States v. Castillo*, 70 F.4th 894, 898 (5th Cir. 2023). In *Malik v. DHS*, the Fifth Circuit recognized that reasonable suspicion was the highest standard that might apply even if a search was considered "non-routine" cell phone searches. 78 F.4th 191, 201 (5th Cir. 2023) ("Here, however, we need not decide whether the search was routine versus non-routine. That is because reasonable suspicion was present. Reasonable suspicion requires only a 'minimal level of objective justification that

---

[5]    Given the vague allegations at issue in the case, the appeals court cautioned that its decision was limited. *Abdellatif*, 109 F.4th at 573 ("We only conclude that airport security inspections as described in the government's declarations, or interviews at the border of reasonable length and conducted in good faith, do not offend the Fourth Amendment.").

consists of more than inchoate or unparticularized suspicion or hunch.' DHS met that 'low threshold' here."); *see Anibowei v. Bondi*, No. 24-11042, 2025 WL 3231720, at *2 (5th Cir. Nov. 19, 2025) (affirming district court's decision dismissing APA claim against CBP's 2009 and 2018 border search of electronic devices directives).

The other circuits that have addressed the issue have also held that basic/manual searches of electronic devices may be conducted without suspicion and without a warrant. *Alasaad v. Mayorkas*, 988 F.3d 8, 18 (1st Cir. 2021) ("A warrant nor probable cause is required for a border search of electronic devices."); *id.* at 19 ("[B]asic border searches are routine searches and need not be supported by reasonable suspicion."); *Ickes*, 393 F.3d at 505, 507 (manual border searches of electronic devices do not require "reasonable suspicion" squarely resolves this case); *United States v. Kolsuz*, 890 F.3d 133, 146 n.5 (4th Cir. 2018) (addressing a forensic search of a device and describing *Ickes*, 393 F.3d 501, as "treat[ing] a [basic] search of a computer as a routine border search, requiring no individualized suspicion"); *United States v. Mendez*, 103 F.4th 1303, 1310 (7th Cir. 2024) (holding that searches of electronic devices at the border do not require a warrant or probable cause and manual searches of electronic devices at the border are "routine" border searches and do not need individualized suspicion); *United States v. Cano*, 934 F.3d 1002, 1016 (9th Cir. 2019) ("[W]e hold that manual searches of cell phones at the border are reasonable without individualized suspicion, whereas the forensic examination of a cell phone requires a showing of reasonable suspicion."); *United States v. Pulido*, 133 F.4th 1256, 1275 (11th Cir. 2025) ("Because our precedents in the border-search context state both (1) that we require reasonable suspicion only for highly intrusive searches of a person's body and (2) that forensic searches of electronic devices don't require any level of suspicion, we affirm the district court's holding that

the government's search of Pulido's iPhone and MacBook didn't violate the Fourth Amendment.") (citing *United States v. Touset*, 890 F.3d 1227 (11th Cir. 2018)).

The CBP directive challenged in this case is in line with the standard that these courts have adopted for conducting border searches of electronic devices.  Under both the 2018 and 2026 CBP directives, CBP officers may conduct a basic search "with or without suspicion."  2018 CBP Directive, at § 5.1.3; 2026 CBP Directive, at § 5.1.3.  Under the 2018 CBP Directive, CBP officers could conduct an advanced search if "there [was] reasonable suspicion of activity in violation of the laws enforced or administered by CBP, or in which there is a national security concern," and only with supervisory approval. 2018 CBP Directive, at § 5.1.4.  Under the 2026 CBP directive, officers may conduct advanced searches "only in instances in which there is reasonable suspicion of activity in violation of the laws enforced or administered by CBP or, in the absence of individualized reasonable suspicion when there is a national security concern."  2026 CBP Directive, at § 5.1.4.  Such advanced searches (which are not alleged to have occurred in this case) require supervisory approval, and in the case of advanced searches without reasonable suspicion for purposes of national security, approval from the Director, Field Operations; Chief Patrol Agent; Director, Air Operations; Director, Marine Operations; Special Agent in Charge; or their delegate, as appropriate, is required.  *Id.*  The ICE Directive states that "ICE Special Agents acting under border search authority may search, detain, seize, retain, and share electronic devices, or information contained therein, with or without individualized suspicion, consistent with the guidelines and applicable laws set forth herein[,]" which is similarly in keeping with the caselaw discussed.  2009 ICE Directive, at § 6.1.

- 20 -

Under the border-search doctrine, the search of an electronic device at the border is reasonable—and therefore does not offend the Constitution—by virtue of the fact that it occurs at the border.  Plaintiff's Fourth Amendment claim should be dismissed for failure to state a claim.

**III.    Plaintiff Has Not Stated A Claim For Violation Of the Administrative Procedure Act**

Plaintiff's APA claims should also be dismissed because Plaintiff has other adequate remedies at law, namely the ability to sue directly under the Fourth Amendment.

The APA provides for judicial review of final agency action only where "there is no other adequate remedy in a court." 5 U.S.C. § 704.  "[I]n determining whether an adequate remedy exists, [the D.C. Circuit] has focused on whether a statute provides an independent cause of action or an alternative review procedure." *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005).  "[W]here a statute affords an opportunity for *de novo* district-court review [of an administrative denial], the [C]ourt [of Appeals] has held that APA review was precluded because 'Congress did not intend to permit a litigant challenging an administrative denial . . . to utilize simultaneously both [the review provision] and the APA.'" *Id.* (quoting *Env't Def. Fund v. Reilly,* 909 F.2d 1497, 1501 (D.C. Cir. 1990)).  Thus, "the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Garcia v. Vilsack,* 563 F.3d 519, 522 (D.C. Cir. 2009) (quoting *El Rio*, 396 F.3d at 1272).  "In evaluating the availability and adequacy of alternative remedies, however, the court must give the APA 'a hospitable interpretation such that only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review.'" *Id.* (quoting *El Rio,* 396 F.3d at 1270).

Plaintiff asks the Court to hold unlawful and set aside the CBP Directive pursuant to 5 U.S.C. § 706(2) as being contrary to the Fourth Amendment.  Here, Plaintiff's constitutional challenge and request for injunctive relief, if successful, would provide the same genre of relief as

his requested relief under the APA.  Thus, Plaintiff's APA claim is barred by 5 U.S.C. § 704.  *See*

*Anibowei v. Mayorkas*, No. 3:16-CV-3495-D, 2024 WL 4887525, at *6 (N.D. Tex. Nov. 22, 2024),

aff'd on other grounds sub nom. *Anibowei v. Bondi*, No. 24-11042, 2025 WL 3231720 (5th Cir.

Nov. 19, 2025) (dismissing APA claim because plaintiff had an adequate alternative remedy to his

APA challenge because he could allege a constitutional claim).

**CONCLUSION**

For these reasons, Plaintiff's claims should be dismissed.

Dated: April 24, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _____ */s/ Sian Jones* _____
SIAN JONES, D.C. Bar #1024062
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2578

*Attorneys for the United States of America*

- 23 -