UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILMER CHAVARRIA,<br><br>       Plaintiff,<br><br>       v.<br><br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY, et al.,<br><br>       Defendants. | Civil Action No. 25-4289 (DLF) |

**<u>REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................. ii

Argument ............................................................................................................................. 1

    I.     This Court Does Not Have Jurisdiction Over Plaintiff's Claims ............................ 1

        A.    Plaintiff Does Not Have Standing To Seek Purely Equitable Relief .......... 1

        B.    Plaintiff Does Not Allege That ICE Injured Him And Therefore Lacks Standing .................................................................................................... 4

        C.    Plaintiff Lacks Standing Because The Requested Relief Would Not Redress The Alleged Injuries ................................................................... 5

        D.    Plaintiff's Claim Against CBP Is Moot ..................................................... 6

    II.    Plaintiff Has Not Stated A Claim For Violation Of the Fourth Amendment ......... 7

        A.    *Riley* Does Not Support Plaintiff's Claims ................................................ 7

        B.    Rationales For The Border Search Exception Apply to Searches of Electronic Devices ................................................................................. 10

        C.    The Distinction Between "Basic" and "Advanced" Matters ................... 13

        D.    *United States v. Kim* Does Not Apply To Border Searches ..................... 14

    III.    Plaintiff Has Not Stated A Claim For Violation Of the Administrative Procedure Act ........................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdellatif v. DHS,*
109 F.4th 562 (D.C. Cir. 2024) .................................................................................... 7

*Abidor v. Napolitano,*
990 F. Supp. 2d 260 (E.D.N.Y. 2013) ........................................................................ 3

*Alasaad v. Mayorkas,*
988 F.3d 8 (1st Cir. 2021) ................................................................................... passim

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ....................................................................................................... 2

*Ctr. for Democracy & Tech. v. Trump,*
507 F. Supp. 3d 213 (D.D.C. 2020) ............................................................................. 5

*Diamond Alternative Energy, LLC v. Env't Prot. Agency,*
606 U.S. 100 (2025) ...................................................................................................... 6

*Duke Power Co. v. Carolina Env't Study Grp., Inc.,*
438 U.S. 59 (1978) ........................................................................................................ 5

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Human Servs.,*
396 F.3d 1265 (D.C. Cir. 2005) .................................................................................. 16

*Jibril v. Mayorkas,*
20 F.4th 804 (D.C. Cir. 2021) ...................................................................................... 1

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) .................................................................................................. 4, 5

*Malik v. U.S. Dep't of Homeland Sec.,*
78 F.4th 191 (5th Cir. 2023) ........................................................................................ 8

*Massachusetts v. E.P.A.,*
549 U.S. 497 (2007) ...................................................................................................... 5

*Molina v. U.S. Department of Homeland Security,*
811 F. Supp. 3d 1 (D.D.C. 2025) ................................................................................. 2

*Murthy v. Missouri,*
603 U.S. 43 (2024) ................................................................................................... 1, 2

*Peterson v. Transp. Workers Union of Am., AFL-CIO,*
75 F. Supp. 3d 131 (D.D.C. 2014) ............................................................................... 5

*Riley v. California,*
573 U.S. 373 (2014) ...................................................................................... 7, 8, 9, 12

*Sayad v. Dep't of Homeland Sec.,*
Civ. A. No. 20-2333 (TSC), 2022 WL 4130840 (D.D.C. Sept. 12, 2022) .................. 6

*Scenic Am., Inc. v. Dep't of Transp.,*
836 F.3d 42 (D.C. Cir. 2016) ....................................................................................... 5

*Stilwell v. Off. of Thrift Supervision,*
569 F.3d 514 (D.C. Cir. 2009) ..................................................................................... 4

*United States v. Aigbekaen,*
943 F.3d 713 (4th Cir. 2019) ...................................................................................... 12

*United States v. Boumelhem*,
   339 F.3d 414 (6th Cir. 2003) ............................................................................... 15

*United States v. Brennan*,
   538 F.2d 711 (5th Cir. 1976) ............................................................................... 16

*United States v. Cano*,
   934 F.3d 1002 (9th Cir. 2019) ............................................................... 8, 10, 13

*United States v. Cardona*,
   769 F.2d 625 (9th Cir. 1985) ............................................................................... 15

*United States v. Castillo*,
   70 F.4th 894 (5th Cir. 2023) ................................................................................. 8

*United States v. Cotterman*,
   709 F.3d 952 (9th Cir. 2013) ................................................................. 7, 10, 15

*United States v. Ezeiruaku*,
   936 F.2d 136 (3d Cir. 1991) ................................................................................. 15

*United States v. Flores-Montano*,
   541 U.S. 149 (2004) ........................................................................................ 7, 13

*United States v. Gurr*,
   471 F.3d 144 (D.C. Cir. 2006) ...................................................................... 10, 11

*United States v. Hassanshahi*,
   75 F. Supp. 3d 101 (D.D.C. 2014) ....................................................................... 15

*United States v. Ickes*,
   393 F.3d 501 (4th Cir. 2005) ................................................................................. 3

*United States v. Kim*,
   103 F.Supp.3d 32 (D.D.C. 2015) ......................................................... 7, 14, 15, 16

*United States v. Kolsuz*,
   890 F.3d 133 (4th Cir. 2018) ..................................................................... 9, 12, 13

*United States v. Montoya de Hernandez*,
   473 U.S. 531 (1985) ........................................................................................ 7, 13

*United States v. Odutayo*,
   406 F.3d 386 (5th Cir. 2005) ............................................................................... 15

*United States v. Oriakhi*,
   57 F.3d 1290 (4th Cir. 1995) ............................................................................... 15

*United States v. Touset*,
   890 F.3d 1227 (11th Cir. 2018) ........................................................... 9, 11, 12, 13

*United States v. Udofot*,
   711 F.2d 831 (8th Cir. 1983) ............................................................................... 15

*United States v. Vergara*,
   884 F.3d 1309 (11th Cir. 2018) ............................................................................. 9

*United States v. Wanjiku*,
   919 F.3d 472 (7th Cir. 2019) ................................................................................. 8

*United States v. Xiang*,
   67 F.4th 895 (8th Cir. 2023) ................................................................................. 8

Defendants Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), Immigration and Customs Enforcement ("ICE"), the Secretary of Homeland Security ("Secretary"), the CBP Commissioner, and the Senior Official Performing the Duties of ICE Director ("Defendants"), respectfully submit the following reply in further support of their motion to dismiss the complaint filed by Plaintiff Wilmer Chavarria pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).[1]

ARGUMENT

## I.   This Court Does Not Have Jurisdiction Over Plaintiff's Claims

### A.   Plaintiff Does Not Have Standing To Seek Purely Equitable Relief

As demonstrated by Defendants' Motion, Plaintiff does not have standing to pursue forward-looking equitable relief in the form of a declaratory judgment regarding the legality of Defendants' policies and a permanent injunction prohibiting Defendants from performing warrantless searches of Plaintiff's electronic devices.  Defs.' Mot. (ECF No. 15) at 13-18 (citing *Murthy v. Missouri*, 603 U.S. 43, 45 (2024); *see also Jibril v. Mayorkas*, 20 F.4th 804, 814 (D.C. Cir. 2021)).

Plaintiff's Opposition responds by arguing that his decision to no longer travel with his laptop is an ongoing injury and that he has shown a "substantial" risk that he will be searched at the border again because he was searched once and continues to travel internationally.  Pl's Opp'n (ECF No. 17) at 18-24.  Plaintiff's Opposition does not demonstrate that he is entitled to prospective equitable relief for several reasons.  First, though the Complaint does allege that he has chosen not to travel with his laptop (and therefore cannot work remotely while he is outside of

---

[1]   Defendants' Motion contained a scrivener's error stating that the motion was pursuant to Rule 12(b)(2) instead of 12(b)(6).

the United States), Plaintiff does not allege that he has not or will not travel with his cell phone,

nor does the Complaint allege that his cell phone was searched upon his return from subsequent

international trips. *See generally*, Compl. (ECF No. 1). As explained in Defendants' Motion, the

fact that Plaintiff traveled internationally prior to and subsequent to the incident giving rise to this

lawsuit and does not allege that his person or any devices[2] he may have been carrying on those

trips were searched at the border, indicates that there is a low likelihood of being subjected to a

warrantless search in the future. Defs.' Mot. (ECF No. 15) at 14-15 (citing *Murthy*, 603 U.S. at

69; *City of Los Angeles v. Lyons*, 461 U.S. 95, 98 (1983)).

Plaintiff's Opposition argues that his situation is analogous to the one in *Molina v. U.S.

Department of Homeland Security*, 811 F. Supp. 3d 1 (D.D.C. 2025), where Judge Howell found

that there was sufficient evidence of an allegedly illegal policy that was likely to affect plaintiffs

in the future to warrant prospective relief. Pl's Opp'n (ECF No. 17) at 23. But the policies that

Plaintiff challenges here (as well as the policies that superseded the ones cited in the Complaint)

do not contain any components that indicate that Plaintiff was targeted when he was searched. *See

generally*, CBP's 2026 "Border Search of Electronic Devices," available at

https://www.cbp.gov/sites/default/files/2026-01/cbp_directive_3340-049b_jan_2026_508.pdf

(last visited June 11, 2026) ("2026 CBP Policy").[3] As noted, the Complaint only alleges that

Plaintiff and his Devices were searched once, and it does not allege that he was stopped on

subsequent international trips and asked if he was carrying devices or that his phone (which he

---

[2]     Defendants defined "Devices" in their Motion as Plaintiff's laptop, smartphone, and tablet. Defs.' Mot. (ECF No. 15) at 8.

[3]     Moreover, the policies in *Molina* related to mass arrests and warrantless searches incident to arrest, not border searches. *Molina*, 811 F. Supp. 3d at 15-26. As discussed in Defendants' Motion and *infra*, the border search exception to the Fourth Amendment's warrant requirement is based on different considerations than the search incident to arrest exception.

does *not* allege was left in the United States along with his laptop) was searched. Compl. (ECF No. 1) ¶¶ 5-6, 45. Having failed to allege that Plaintiff's cellphone was searched on subsequent international trips, his attempts to distinguish *Abidor v. Napolitano*, 990 F. Supp. 2d 260 (E.D.N.Y. 2013) and *United States v. Ickes*, 393 F.3d 501 (4th Cir. 2005) by claiming that contemporary travelers rely on their electronic devices more than those in the aughts and teens, fall flat. *See* Pl's Opp'n (ECF No. 17) at 23-24.

Plaintiff uses a sleight of hand to suggest that his suspicion that his devices underwent an "advanced" or forensic search should affect the Court's calculus. Pl's Opp'n (ECF No. 17) at 22. As a threshold matter, the Complaint contains no allegations of fact that support the inference that his Devices were subjected to a forensic search (i.e. that their contents were exported and/or searched using computer programs that allow a more in-depth examination than an officer would be capable of conducting on his or her own). *See generally*, Compl. (ECF No. 1). As noted in Defendants' Motion, Plaintiff alleges only that he does not know whether data was exported. *Id.* ¶ 6. Moreover, the 2026 CBP Policy includes a requirement that there be reasonable suspicion or a national security concern prior to an advanced search of an electronic device—and requires supervisory approval prior to any such search. 2026 CBP Policy ¶ 5.1.4 ("An officer may perform an advanced search of an electronic device only in instances in which there is reasonable suspicion of activity in violation of the laws enforced or administered by CBP or, in the absence of individualized reasonable suspicion when there is a national security concern. All advanced searches require supervisory approval at the Grade 14 level or higher (or a manager with comparable responsibilities)."). In short, because Plaintiff has not plausibly alleged that he was actually subjected to an advanced search—and because he has not plausibly alleged that it is likely

that he will be subjected to a suspicion-less basic search on future trips, his situation is distinguishable from the one in *Molina*.

In sum, under Article III's case-or-controversy requirement, Plaintiff's complaint is subject to dismissal for lack of standing.

### B.    Plaintiff Does Not Allege That ICE Injured Him And Therefore Lacks Standing

As demonstrated by Defendants' Motion, the Complaint does not plausibly allege that any ICE agents caused him any injury, much less one that would be redressable by recission of the challenged ICE policy.  Defs.' Mot. (ECF No. 15) at 18-19 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992); *Stilwell v. Off. of Thrift Supervision*, 569 F.3d 514, 518 (D.C. Cir. 2009)).  Plaintiff's response to this argument in his Opposition relies on a creative interpretation of his Complaint and on speculation.  First, Plaintiff argues that "on information and belief, advanced searches were conducted during the time his devices were out of his possession," and suggests that ICE agents were involved in these searches.  Pl's Opp'n (ECF No. 17) at 24.  The phrase "on information and belief" does not appear in the Complaint, *see generally*, Compl. (ECF No. 1), and, as noted in Defendants' Motion, the only allegations regarding ICE relate to the existence of policies affecting ICE agents and the fact that Plaintiff does not know "whether ICE Special Agents were involved in [Plaintiff's] July 2025 detention and search of his devices[,]" Defs.' Mot. (ECF No. 15) at 18-19.  Thus, the allegations in the Complaint do not support the assertions in Plaintiff's Opposition.

Plaintiff attempts to salvage his claim against ICE by arguing that "[e]ven if ICE did not participate in the July 2025 detention of Mr. Chavarria and search of his devices, Mr. Chavarria still faces a substantial risk that ICE will be involved in future device searches" because "[t]he ICE Directive authorizes ICE agents to conduct warrantless, suspicionless device searches at the

border." Pl's Opp'n (ECF No. 17) at 25. This is exactly the sort of speculative harm and request for an advisory opinion that Article III courts cannot entertain. *See*, *e.g.*, *Peterson v. Transp. Workers Union of Am., AFL-CIO*, 75 F. Supp. 3d 131, 133 (D.D.C. 2014) (dismissing suit seeking declaratory judgment and permanent injunction because alleged harms were speculative and claims not ripe); *Ctr. for Democracy & Tech. v. Trump*, 507 F. Supp. 3d 213, 223 (D.D.C. 2020) (dismissing suit seeking to enjoin enforcement of executive order on standing grounds).

Plaintiff's claims against ICE should be dismissed for lack of standing for failure to plead a cognizable injury.

### C. Plaintiff Lacks Standing Because The Requested Relief Would Not Redress The Alleged Injuries

As demonstrated by Defendants' Motion, the Complaint does not plausibly allege that rescission of the challenged CBP and ICE directives would remedy his alleged injury because those directives are not the source of the government's authority to perform the type of border search to which Plaintiff was subjected. Defs.' Mot. (ECF No. 15) at 19-20 (citing *Defenders of Wildlife,* 504 U.S. at 561; *Scenic Am., Inc. v. Dep't of Transp.*, 836 F.3d 42, 50-53 (D.C. Cir. 2016)). Plaintiff responds by arguing that vacatur of the policies will at least partially remedy his injury because it will "remov[e] the official framework that authorizes, encourages, and implements the procedures by which warrantless device searches are conducted at the border." Pl's Opp'n (ECF No. 17) at 27. But that argument is a non sequitur. If the constitution grants Defendants the power to take the challenged actions, removal of the written policy providing guidance regarding how to exercise that power will not remedy Plaintiff's alleged injuries. The cases that Plaintiff cites regarding challenges to acts of Congress or agency regulations do not involve analogous situations. *See Massachusetts v. E.P.A.,* 549 U.S. 497, 525-26 (2007) (seeking order requiring agency to enforce Clean Air Act); *Duke Power Co. v. Carolina Env't Study Grp.,*

*Inc.*, 438 U.S. 59, 77-78 (1978) (seeking invalidation of a statute that allowed private companies to operate nuclear power plants); *Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100, 114 (2025) (seeking invalidation of agency action approving state regulations that plaintiffs contended violated the Clean Air Act). Moreover, the First Circuit in *Alasaad* did not decide the issue of redressability. *See generally*, *Alasaad v. Mayorkas*, 988 F.3d 8, 15 n.5 (1st Cir. 2021).

Because the remedies that Plaintiff requests would not remedy his alleged injuries, the Complaint should be dismissed for lack of standing.

### D.    Plaintiff's Claim Against CBP Is Moot

As demonstrated by Defendants' Motion, CBP's adoption of a new policy in January 2026, moots Plaintiff's request to have the Court vacate the 2018 CBP policy. Defs.' Mot. (ECF No. 15) at 20-21 (citing *Sayad v. Dep't of Homeland Sec.*, Civ. A. No. 20-2333 (TSC), 2022 WL 4130840, at *2 (D.D.C. Sept. 12, 2022)).[4] Plaintiff's Opposition argues essentially that the case is not moot because the updated policy has features similar to the challenged policy and might harm Plaintiff in the future. Pl's Opp'n (ECF No. 17) at 27-33. But Plaintiff misses the point. Plaintiff's effort to vacate the 2018 CBP Policy is moot because it is no longer in effect. If Plaintiff wishes to challenge the operative policy, he needs to amend his complaint—though doing so would be futile because he does not have standing to seek prospective relief and has not stated a claim for violation of the Fourth Amendment. *See generally*, Defs.' Mot. (ECF No. 15). Accordingly, the Court should dismiss this case against CBP for a lack of jurisdiction under Rule 12(b)(1).

---

[4]    Defendants also noted that the challenged 2009 ICE Directive was affected by more recent guidance. Defs.' Mot. (ECF No. 15) at 21 n.4.

**II.**     <u>**Plaintiff Has Not Stated A Claim For Violation Of the Fourth Amendment**</u>

As demonstrated by Defendants' Motion, Plaintiff's allegations that the search of his Devices at the border violated the Fourth Amendment fail to state any claim for relief.  Defs.' Mot. (ECF No. 15) at 21-27 (citing *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985); *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004); *Abdellatif v. DHS*, 109 F.4th 562, 572-73 (D.C. Cir. 2024)).  Specifically, Defendants explained that the search of Plaintiff (which he does not allege involved an invasive search of his person) fell into the border-search exception to the Fourth Amendment's warrant requirement.  *Id.* at 22-23 (citing *Montoya de Hernandez*, 473 U.S. at 538; *Flores-Montano*, 541 U.S. at 152-53).  Importantly, Defendants noted, the Complaint does not allege any facts supporting the inference that any advanced forensic search of his Devices or exporting of information or data occurred, it alleges only that Plaintiff did not know whether data was exported. Defs.' Mot. (ECF No. 15) at 23 (citing Compl. (ECF No. 1)).

Plaintiff's Opposition, after asserting that Defendants are attempting to create a Fourth Amendment-free zone at the border, argues that Supreme Court precedent regarding searches incident to an arrest (and cases in this Circuit and out applying that precedent) demonstrate the illegality of Defendants' actions and dictate the outcome of this case in his favor.  Pl's Opp'n (ECF No. 17) at 14-18, 36-47 (citing *Riley v. California*, 573 U.S. 373 (2014); *United States v. Kim*, 103 F.Supp.3d 32 (D.D.C. 2015); *United States v. Cotterman*, 709 F.3d 952, 964–65 (9th Cir. 2013) (*en banc*)).  Plaintiff is wrong for multiple reasons.

**A.**     *Riley* **Does Not Support Plaintiff's Claims**

First, *Riley v. California* does not support Plaintiff's claims.  In *Riley*, the Supreme Court held that the search incident to arrest exception to the Fourth Amendment warrant requirement did not extend to searches of cellphones. 573 U.S. 373, 403 (2014). The Court "reasoned that individuals have a heightened privacy interest in their electronic devices due to the vast quantity

of data that may be stored on such devices, and that the government's interest in searching an arrestee's cellphone during an arrest was limited because such searches do not meaningfully advance the search incident to arrest exception's purposes of protecting officers and preventing the destruction of evidence." *Alasaad v. Mayorkas*, 988 F.3d 8, 17 (1st Cir. 2021) (citing *Riley*, 573 U.S. at 386, 388-91). *Riley* did not alter the border search doctrine or otherwise compel a warrant requirement for border searches of electronic devices. In *Riley*, the Supreme Court was clear that its decision was limited to the search incident to arrest doctrine and that "even though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone." *Riley*, 573 U.S. at 401-02.

The Fifth Circuit (where the search at issue in this case occurred), has expressly declined to extend *Riley*'s warrant requirement to border searches of electronic devices. *United States v. Castillo*, 70 F.4th 894, 895 (5th Cir. 2023); *Malik v. U.S. Dep't of Homeland Sec.*, 78 F.4th 191 (5th Cir. 2023). The Fifth Circuit explained that that "[e]very circuit that has faced this question has agreed that *Riley* does not mandate a warrant requirement for border searches of electronic devices, whether basic or advanced." *Malik*, 78 F.4th at 201 (quoting *Alasaad*, 988 F.3d at 17).

Post-*Riley*, courts around the country have continued to examine border searches of electronic devices under the border search doctrine, rejecting calls to impose warrant and probable cause requirements and recognizing that reasonable suspicion is the highest possible standard. *See, e.g.*, *United States v. Xiang*, 67 F.4th 895, 899 (8th Cir. 2023) ("*Riley* involved a different Fourth Amendment exception, searches incident to arrest. No Circuit has held that government must obtain a warrant to conduct a routine border search of electronic devices."); *United States v. Cano*, 934 F.3d 1002, 1015 (9th Cir. 2019) ("post-*Riley*, no court has required more than reasonable suspicion to justify even an intrusive border search"); *United States v. Wanjiku*, 919 F.3d 472, 485

(7th Cir. 2019) ("no circuit court, before or after *Riley*, has required more than reasonable suspicion for a border search of cell phones or electronically-stored data"); *United States v. Kolsuz*, 890 F.3d 133, 147 (4th Cir. 2018) ("Even as *Riley* has become familiar law, there are no cases requiring more than reasonable suspicion for forensic cell phone searches at the border."); *United States v. Vergara*, 884 F.3d 1309, 1312 (11th Cir. 2018) ("The forensic searches of Vergara's phones required neither a warrant nor probable cause."); *United States v. Touset*, 890 F.3d 1227, 1234 (11th Cir. 2018) ("*Riley*, which involved the search-incident-to-arrest exception, does not apply to searches at the border"); *Alasaad*, 988 F.3d at 17 ("Nor does *Riley* by its own terms apply to border searches, which are entirely separate from the search incident to arrest searches discussed in *Riley*.").

*Riley* "d[id] not either create or suggest a categorical rule to the effect that the government must always secure a warrant before accessing the contents of [an electronic device]." *Alasaad*, 988 F.3d at 17 (internal quotation marks and citation omitted; brackets in original). And by its own terms, *Riley* does not apply to border searches, which are separate from the search incident to arrest exception discussed in *Riley*. "The search incident to arrest warrant exception is premised on protecting officers and preventing evidence destruction, rather than on addressing border crime." *Alasaad*, 988 F.3d at 17 (citing *Riley*, 573 U.S. at 384-86). The Ninth Circuit has noted that the difference between the search incident to arrest doctrine as discussed in *Riley* and the border search exception "is critical" *Cano*, at 1015.

Plaintiff argues that the Ninth Circuit applied *Riley* to require reasonable suspicion for forensic searches of electronic devices at the border. Pl's Opp'n (ECF No. 17) at 38-39. But the Ninth Circuit's ultimate decision in *Cano* does not rely on *Riley*. Among other things, the Ninth Circuit had already held that reasonable suspicion was required for forensic searches of a computer

at the border in *Cotterman*, which *Cano* cites in support of its decision. *Cano*, 934 F.3d at 1016 (citing *Cotterman*, 709 F.3d at 968). And, in any event, the Complaint in this case does not contain allegations of fact supporting the plausible inference that his Devices were subjected to any forensic search, so the portion of *Cano* pertaining to forensic searches in inapposite—in addition to the fact that the out-of-Circuit decisions are not binding on this Court.[5]

> **B.**    **Rationales For The Border Search Exception Apply to Searches of Electronic Devices**

Plaintiff's Opposition also argues that the border search exception should not apply to cell phones and other electronic devices because that exception is limited to "ensuring the payment of taxes on imported goods"; "identifying unlawful entrants into the United States"; and "preventing the importation of contraband." Pl's Opp'n (ECF No. 17) at 41-43. Plaintiff's view of the purposes of the border search exception is too narrow, if for no other reason than that the exception has long been recognized to apply to instrumentalities or evidence of crimes, in addition to the actual interdiction of contraband and taxable goods. *See generally United States v. Gurr*, 471 F.3d 144, 149 (D.C. Cir. 2006) (explaining in the context of the border search exception that "[t]he distinction that [plaintiff] would draw between contraband and documentary evidence of a crime is without legal basis").

---

[5]    Plaintiff points to a few out of circuit decisions opining that individualized suspicion and a warrant should be required to conduct border searches of electronic devices. Pl's Opp'n (ECF No. 17) at 39-40. These cases are against the greater weight of authority in this area, and the CBP Border Search of Electronic Devices policy is consistent with the majority view. Although there are differences among some of the circuits regarding the Fourth Amendment standards applicable to border searches of electronic devices, the CBP Directive at issue in this case satisfies even the most demanding level of suspicion adopted by Circuit Courts for forensic searches, and all the Circuit Courts agree that a manual search of an electronic device at the border requires no suspicion. *See Alasaad*, 988 F.3d at 17-18 (discussing cases); Defs.' Mot. (ECF No. 15)at 25.

CBP's 2026 "Border Search of Electronic Devices," available at https://www.cbp.gov/sites/default/files/2026-01/cbp_directive_3340-049b_jan_2026_508.pdf (last visited June 11, 2026) ("2026 CBP Policy"), reflects this more fulsome justification for the border search exception. As explained in the "Purpose" section, border searches of electronic devices "are conducted in furtherance of CBP's customs, immigration, law enforcement, and homeland security responsibilities and to ensure compliance with customs, immigration, and other laws that CBP is authorized to enforce and administer." 2026 CBP Policy § 1.1. Among other things, the policy explains, border searches "help detect evidence relating to terrorism and other national security matters, human and bulk cash smuggling, narcotics smuggling, firearms smuggling, contraband, and child pornography." *Id.* § 1.2. These searches both "enable the discovery of digital contraband, such as child pornography, illicit transfer of restricted or classified information, or other export-controlled information" and "can also reveal information about financial and commercial crimes, such as those relating to copyright, trademark, smuggling, transnational theft of proprietary information and export control violations." *Id.* Moreover, the information gathered through border searches is "integral to evaluating traveler statements regarding purpose of travel and intentions upon entry or exit." *Id.*

Indeed, the Eleventh Circuit has recognized that digital data, which can be actual contraband in the case of files containing child exploitation material (child pornography), or evidence of illegal activity in the case of payment transactions and receipts, is subject to the border search exception. *United States v. Touset*, 890 F.3d 1227, 1229 (11th Cir. 2018). In *Touset*, the court noted that "[b]order agents bear the same responsibility for preventing the importation of contraband in a traveler's possession regardless of advances in technology." *Touset*, 890 F.3d at 1233. The court acknowledged that "[i]n *Riley*, the Supreme Court explained that the rationales

that support the search-incident-to-arrest exception—namely the concerns of harm to officers and destruction of evidence—did not have much force with respect to digital content on cell phones, because digital data does not pose comparable risks." *Touset*, 890 F.3d at 1235 (cleaned up) (citing *Riley*, 573 U.S. at 384-86). But the court went onto state that "digital child pornography poses the same exact risk of unlawful entry at the border as its physical counterpart" and, "[i]f anything, the advent of sophisticated technological means for concealing contraband only heightens the need of the government to search property at the border unencumbered by judicial second-guessing." *Id.* Thus, nothing in *Riley* undermines the application of the border-search exception to digital property.

Other circuits also support the proposition that the border-search is not limited to interdiction of contraband. The First Circuit found that "the border search exception is not limited to searches for contraband itself rather than evidence of contraband or a border-related crime." *Alasaad*, 988 F.3d at 20; *see also id.* ("Searching for evidence is vital to achieving the border search exception's purposes of controlling 'who and what may enter the country.'"). The Fourth Circuit has also recognized that border searches may be conducted to identify digital evidence of cross-border crime. In declining to extend *Riley* to border searches, the Fourth Circuit explained that "[t]he justification behind the border search exception is broad enough to accommodate not only the direct interception of contraband as it crosses the border, but also the prevention and disruption of ongoing efforts to export contraband illegally, through searches initiated at the border." *United States v. Kolsuz*, 890 F.3d 133, 143–44 (4th Cir. 2018); *see also United States v. Aigbekaen*, 943 F.3d 713, 721 (4th Cir. 2019) (describing the purpose of border searches as "protecting national security, collecting duties, blocking the entry of unwanted persons, or disrupting efforts to export or import contraband").

### C.      The Distinction Between "Basic" and "Advanced" Matters

Plaintiff's argument that the distinction between "basic" and "advanced" searches is "illusory," Pl's Opp'n (ECF No. 17) at 43-44, misunderstands *Riley* and other precedent.   The Supreme Court has distinguished between "routine" searches and "intrusive" ones.  *See Montoya de Hernandez*, 473 U.S. at 538 ("Routine searches of the persons and effects of entrants [into the United States] are not subject to any requirement of reasonable suspicion, probable cause, or warrant."); *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004) ("Complex balancing tests to determine what is a 'routine' search of a vehicle, as opposed to a more 'intrusive' search of a person, have no place in border searches of vehicles.").  As explained above, the circuit courts that have addressed these issues have uniformly held that *Riley* does not require a warrant or reasonable suspicion for routine searches of electronic devices. For searches of electronic devices, the circuit courts have only differed as to whether reasonable suspicion is required for forensic searches. *Compare, e.g.*, *United States v. Touset*, 890 F.3d 1227, 1231 (11th Cir. 2018) ("Fourth Amendment does not require any suspicion for forensic searches of electronic devices at the border"), *with Cano*, 934 F.3d at 1016 (holding "the forensic examination of a cell phone requires a showing of reasonable suspicion"), *and United States v. Kolsuz*, 890 F.3d 133 (4th Cir 2018) (holding "a forensic border search of a phone must be treated as nonroutine, permissible only on a showing of individualized suspicion").

Even assuming advanced searches are nonroutine border searches under the Fourth Amendment that would require heightened suspicion, the CBP Directive complies with that more demanding level of suspicion because it only permits an advanced search if there is reasonable suspicion of a violation of law enforced or administered by CBP or a national security concern (in addition to the appropriate level of supervisory approval).  2026 CBP Policy § 5.1.4.  And, again, the Complaint in this case does not contain allegations of fact supporting the inference that

- 13 -

Plaintiff's devices were subjected to a forensic search. *See generally*, Compl. (ECF No. 1). Thus, the Court should reject Plaintiff's sleight of hand attempt to argue that the few cases citing *Riley* to support a reasonable suspicion standard for forensic phone searches are relevant to his attempt to have this Court impose warrant and probable cause requirements. The Complaint simply alleges that Plaintiff's Devices were taken and searched. There is no binding precedent that the Fourth Amendment requires even reasonable suspicion for such searches, much less a warrant and probable cause as urged by Plaintiff.

### D.    *United States v. Kim* Does Not Apply To Border Searches

Plaintiff's Opposition places much emphasis on Judge Berman Jackson's decision in *United States v. Kim* and admonishes Defendants for failing to mention it in their Motion. Pl's Opp'n (ECF No. 17) at 14-18, 45-46. But *Kim* (which is persuasive, not binding, authority) is imminently distinguishable from this case and does not disturb any of the principles discussed above.

In *Kim*, the D.C. district court suppressed evidence in a criminal case after finding the search of a laptop computer using forensic software for the purposes of gathering evidence in a pre-existing investigation—and which was conducted on a duplicate of the computer drive after it was seized at an international airport and after the plaintiff had departed the country—was supported by "so little suspicion" and disconnected from the considerations underpinning the border search authority. 103 F. Supp. 3d 32, 59 (D.D.C. 2015). But the decision is inapplicable to Plaintiff's case because the court in *Kim* effectively ruled that the search at issue should not be considered a "border search" at all based on several unique factors, none of which are present here: (1) it was a search conducted when the passenger was outbound, rather than an inbound; (2) the traveler's laptop was transported 150 miles from the border and its contents copied; (3) the information extracted from the laptop were reviewed by agents for a period of weeks; and (4) the

government secured a warrant after the initial search, but agents testified that no further searching or extraction occurred after the warrant was secured. *Kim*, 103 F. Supp. 3d at 57-59.

The court in *Kim* was asked to apply Ninth Circuit precedent set forth in *United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013) because the initial search took place at Los Angeles International Airport ("LAX"). The Court explained that if it "were to determine, after considering the totality of the circumstances, that a reasonably prudent officer would have been justified in his belief that Kim was engaged in ongoing criminal activity at the time he was stopped at LAX, then the search would have been lawful under the *Cotterman* standard." *Id.* at 44 (noting it would have adopted the approach taken by *United States v. Hassanshahi*, 75 F. Supp. 3d 101, 118-19 (D.D.C. 2014)). After defining "reasonable suspicion" to only relate to ongoing or imminent crime, the Court found that the government lacked reasonable suspicion and compared it to a "fishing expedition." *Id.* at 44, 46.

Next, the court determined it was necessary to review the "justifications underlying the exception to the warrant requirement that pertain at the border." *Id.* at 55. In reviewing the border-search justifications, the court noted that "[n]one of those significant government interests in monitoring what comes *in* to the country apply in this case." *Id.* at 56.[6] The court then considered whether the search fell within the border search exception at all. It explained that "the search 'did not possess the characteristics of a border search or other regular inspection procedures. It more resembled the common nonborder search based on individualized suspicion, which must be

---

[6]    Despite *Kim*'s skepticism of outbound border searches, every circuit to consider the issue was found that the border search authority extends to property leaving the country. *See United States v. Odutayo*, 406 F.3d 386, 391-92 (5th Cir. 2005); *United States v. Boumelhem*, 339 F.3d 414, 422-23 (6th Cir. 2003); *United States v. Oriakhi*, 57 F.3d 1290, 1296-97 (4th Cir. 1995); *United States v. Ezeiruaku*, 936 F.2d 136, 143 (3d Cir. 1991); *United States v. Cardona*, 769 F.2d 625, 629 (9th Cir. 1985); *United States v. Udofot*, 711 F.2d 831, 839-40 (8th Cir. 1983).

prefaced by the usual warrant and probable cause standard." *Id.* at 58 (quoting *United States v. Brennan*, 538 F.2d 711, 716 (5th Cir. 1976)).

Ultimately, while the Court in *Kim* may have reviewed *Riley's* reasoning, the court did not answer "the question of whether and when reasonable suspicion would be constitutionally required, or . . . articulate a broad rule of general applicability to future searches of electronic media . . . ." *Id.* at 53. And, importantly, *Kim* did not require a warrant or probable cause for border searches of electronic devices. *See generally*, *id.*

\* \* \*

Under the border-search doctrine, the search of an electronic device at the border is reasonable—and therefore does not offend the Constitution—by virtue of the fact that it occurs at the border. Plaintiff's Fourth Amendment claim should be dismissed for failure to state a claim.

### III.    Plaintiff Has Not Stated A Claim For Violation Of the Administrative Procedure Act

As demonstrated by Defendants' Motion, Plaintiff's Administrative Procedure Act ("APA") claims should also be dismissed because Plaintiff has other adequate remedies at law, namely the ability to sue directly under the Fourth Amendment. Defs.' Mot. (ECF No. 15) at 27-29 (citing 5 U.S.C. § 704; *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005). In his Opposition, Plaintiff argues that a constitutional claim is not the sort of "adequate alternative remedy" contemplated by the APA. Pl's Opp'n (ECF No. 17) at 47-50. Defendants respectfully disagree but, in any event, Plaintiff's APA claim is predicated on the challenged policies and actions violating the Fourth Amendment. *See* Compl. (ECF No. 1) ¶¶ 46-51. As explained in Defendants' Motion and above, Plaintiff has not plausibly alleged that Defendants violated the Fourth Amendment. Therefore, even if Plaintiff

was not barred from stating an APA claim (which Defendants do not concede), that claim would fail on its own terms.[7]

**CONCLUSION**

For these reasons, Plaintiff's claims should be dismissed.

Dated: June 15, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____/s/ Sian Jones_____
SIAN JONES, D.C. Bar #1024062
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2578

*Attorneys for the United States of America*

---

[7] Defendants do not dispute that the Fifth Circuit in *Anibowei v. Bondi*, did not affirm the district court's decision regarding the availability of an APA claim in that case. No. 24-11042, 2025 WL 3231720 *1 n. 2 (5th Cir. Nov. 19, 2025). To the extent that the placement of the parenthetical in the citation to *Anibowei* in Defendants' Motion created confusion as to whether the Fifth Circuit affirmed the district court on that point, Defendants concede that they should have placed the parenthetical prior to the citation clause regarding affirmance on other grounds. In any event, the Fifth Circuit's decision not to affirm the district court's holding as to the availability of an APA claim was based on Fifth Circuit precedent not binding on this Court.