UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILMER CHAVARRIA,

Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,

Defendant.

Civil Action No. 25-4289 (DLF)

**MOTION TO DISMISS AMENDED COMPLAINT AND**
**<u>MEMORANDUM IN SUPPORT THEREOF</u>**

# TABLE OF CONTENTS


Table of Contents ........ i

Table of Authorities ........ iii

Introduction ........ 1

Background ........ 2

I. The Government's Authority To Conduct Border Searches ........ 2

A. Procedural History ........ 3

B. Plaintiff's Allegations In the First Amended Complaint ........ 3

Legal Standards ........ 6

I. Rule 12(b)(1) ........ 6

II. Rule 12(b)(6) ........ 7

Argument ........ 8

I. This Court Does Not Have Jurisdiction Over Plaintiff's Claim ........ 8

A. Plaintiff Lacks Standing To Seek Forward-Looking Equitable Relief ........ 8

B. Plaintiff Does Not Allege That ICE Injured Him And Therefore Lacks Standing To Sue ICE ........ 16

C. Plaintiff Lacks Standing Because The Requested Relief Would Not Redress The Alleged Injuries ........ 16

D. Plaintiff's Challenge To The 2018 CBP Directive Is Moot, And He Lacks Standing to Challenge The 2026 CBP Directive ........ 18

II. Plaintiff Has Not Stated A Claim For Violation Of The Fourth Amendment ........ 19

A. Border Searches of Electronic Devices Require Neither A Warrant Nor Probable Cause ........ 19

B. Plaintiff's Contention That The Border-Search Exception Does Not Reach Electronic Devices Is Contrary to Precedent ........ 25

C. The Directives Are Consistent With The Governing Case Law ........ 26

Conclusion ........ 29

## TABLE OF AUTHORITIES

**Cases**

*Abdellatif v. DHS*,
109 F.4th 562 (D.C. Cir. 2024) .......... 19, 23

*Abidor v. Napolitano*,
990 F. Supp. 2d 260 (E.D.N.Y. 2013) .......... 11, 12, 14, 15

*Ahmed v. Kable*,
Civ. A. No. 21-3333 (TJK), 2023 WL 6215024 (D.D.C. Sept. 25, 2023) .......... 20

*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
827 F.3d 100 (D.C. Cir. 2016) .......... 18

*Alasaad v. Mayorkas*,
988 F.3d 8 (1st Cir. 2021) .......... 24, 26

*Anibowei v. Bondi*,
No. 24-11042, 2025 WL 3231720 (5th Cir. Nov. 19, 2025) .......... 24

*Anibowei v. Mayorkas*,
No. 3:16-CV-3495-D, ECF No. 125 (N.D. Tex. Nov. 22, 2024) .......... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 7, 8, 22

*Cannon v. District of Columbia*,
717 F.3d 200 (D.C. Cir. 2013) .......... 12

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 9, 10

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... passim

*Commodity Futures Trading Comm'n v. Nahas*,
738 F.2d 487 (D.C. Cir. 1984) .......... 6

*CREW v. Trump*,
438 F. Supp. 3d 54 (D.D.C. 2020) .......... 17, 22

*Curran v. Holder*,
626 F. Supp. 2d 30 (D.D.C. 2009) ........ 6

*Eccles v. Peoples Bank of Lakewood Vill.*,
333 U.S. 426 (1948) ........ 14

*EEOC v. St. Francis Xavier Parochial Sch.*,
117 F.3d 621 (D.C. Cir. 1997) ........ 7

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) ........ 17

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
185 F. Supp. 2d 9 (D.D.C. 2001) ........ 6

*Jibril v. Mayorkas*,
20 F.4th 804 (D.C. Cir. 2021) ........ 9, 10

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ........ 6

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994) ........ 7

*Laird v. Tatum*,
408 U.S. 1 (1972) ........ 13

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
507 U.S. 163 (1993) ........ 6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 8, 11, 16, 17

*Malik v. DHS*,
78 F.4th 191 (5th Cir. 2023) ........ 23

*Murthy v. Missouri*,
603 U.S. 43 (2024) ........ 9, 10

*Nat'l Mining Ass'n v. Dep't of Interior*,
251 F.3d 1007 (D.C. Cir. 2001) ........ 18

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ........ 9

*Papasan v. Allain*,
478 U.S. 265 (1986) ........ 7

*Raines v. Byrd*,
521 U.S. 811 (1997) ........ 8

*Sayad v. Dep't of Homeland Sec.*,
Civ. A. No. 20-2333 (TSC), 2022 WL 4130840 (D.D.C. Sept. 12, 2022) ........ 18

*Scenic Am., Inc. v. Dep't of Transp.*,
836 F.3d 42 (D.C. Cir. 2016) ........ 17

*Stilwell v. Off. of Thrift Supervision*,
569 F.3d 514 (D.C. Cir. 2009) ........ 16

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996) ........ 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 8, 19

*United States v. Alisigwe*,
No. 24-960, 2026 WL 2751713 (2d Cir. Sept. 17, 2026) ........ 21, 24, 26, 27

*United States v. Arnold*,
533 F.3d 1003 (9th Cir. 2008) ........ 17

*United States v. Boumelhem*,
339 F.3d 414 (6th Cir. 2003) ........ 22

*United States v. Cano*,
934 F.3d 1002 (9th Cir. 2019) ........ 24, 25

*United States v. Cardona*,
769 F.2d 625 (9th Cir. 1985) ........ 22

*United States v. Castillo*,
70 F.4th 894 (5th Cir. 2023) ........ 23

*United States v. Ezeiruaku*,
936 F.2d 136 (3d Cir. 1991) ........ 22

*United States v. Flores-Montano*,
541 U.S. 149 (2004) ........ passim

*United States v. Ickes*,
393 F.3d 501 (4th Cir. 2005) ........................................................................ 11, 24

*United States v. Kim*,
103 F. Supp. 3d 32 (D.D.C. 2015) ............................................................... 22, 23

*United States v. Kolsuz*,
890 F.3d 133 (4th Cir. 2018) ........................................................................ 24, 25

*United States v. Levy*,
803 F.3d 120 (2d Cir. 2015) ................................................................................ 21

*United States v. McAuley*,
563 F. Supp. 2d 672 (W.D. Tex. 2008) ......................................................... 17, 18

*United States v. Mendez*,
103 F.4th 1303 (7th Cir. 2024) ........................................................................... 24

*United States v. Montoya de Hernandez*,
473 U.S. 531 (1985) ......................................................................... 17, 19, 20, 21

*United States v. Odutayo*,
406 F.3d 386 (5th Cir. 2005) ............................................................................. 22

*United States v. Oriakhi*,
57 F.3d 1290 (4th Cir. 1995) .............................................................................. 22

*United States v. Pickett*,
598 F.3d 231 (5th Cir. 2010) ............................................................................. 17

*United States v. Pulido*,
133 F.4th 1256 (11th Cir. 2025) .................................................................. 24, 27

*United States v. Ramsey*,
431 U.S. 606 (1977) ........................................................................... 2, 20, 25, 26

*United States v. Sandler*,
644 F.2d 1163 (5th Cir. 1981) ............................................................................ 20

*United States v. Touset*,
890 F.3d 1227 (11th Cir. 2018) ............................................................... 25, 26, 27

*United States v. Udofot*,
711 F.2d 831 (8th Cir. 1983) .............................................................................. 22

**Statutes**

5 U.S.C. § 706(2) ........ 6

5 U.S.C. § 706(2)(B) ........ 5

6 U.S.C. § 202 ........ 2

6 U.S.C. § 211 ........ 2, 15

28 U.S.C. § 2201 ........ 5

28 U.S.C. § 2202 ........ 6

Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, § 802 (2016)...... 15

**Rules**

Fed. R. Civ. P. 8(a)(2) ........ 7
Fed. R. Civ. P. 12(b)(1) ........ 1, 6, 19
Fed. R. Civ. P. 12(b)(6) ........ 1, 7, 29
Fed. R. Civ. P. 12(h)(3) ........ 6
Fed. R. Civ. P. 65 ........ 6

Other Authorities

10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2762 (3d ed. 1998) ........ 14

CBP, *CBP Releases Updated Border Search of Electronic Device Directive and FY17 Statistics* (Jan. 5, 2018) ........ 12

CBP, Summary of Laws Enforced by CBP (Mar. 8, 2014) ........ 2

Kyle Sweetland et al., *Searches of Electronic Devices at Ports of Entry* (Pac. Legal Found. Dec. 2025) ........ 12

Orin Kerr, *The Digital Fourth Amendment: Privacy and Policing in Our Online World* (2025) 25

Defendants the U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), U.S. Immigration and Customs Enforcement ("ICE"), the Secretary of Homeland Security, the Commissioner of CBP, and the Senior Official Performing the Duties of the Director of ICE (collectively, "Defendants"), respectfully move to dismiss the First Amended Complaint filed by Plaintiff Wilmer Chavarria (ECF No. 21) pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6). A proposed order is attached.

**INTRODUCTION**

Plaintiff's original Complaint challenged CBP and ICE policies governing border searches of electronic devices based on a single search of his devices at a Houston airport in July 2025. Defendants moved to dismiss, explaining that Plaintiff lacks standing to seek forward-looking relief based on one past search, that his challenge to a superseded CBP directive is moot, and that his Fourth Amendment theory fails under settled border-search doctrine. ECF No. 15.

The First Amended Complaint does not cure those defects. It adds a challenge to CBP's January 2026 directive, more detail about the July 2025 encounter, an inference drawn from redacted FOIA records that an "advanced" search may have occurred, and the allegation that Plaintiff has since chosen to travel without his devices. But the amended pleading still rests on a single past search. It still alleges no facts making a future search of Plaintiff's devices anything more than speculative. Plaintiff's decision to leave his devices at home is precisely the kind of self-inflicted harm that cannot "manufacture standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). He has never been subject to the 2026 directive he now challenges. And every court of appeals to consider the issue has rejected his assertion that the Fourth Amendment requires a warrant supported by probable cause for all searches of electronic devices. Accordingly, the First Amended Complaint should be dismissed.

## BACKGROUND[1]

### I. The Government's Authority To Conduct Border Searches

"[T]he United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity." *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004). "The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border. Time and again, we have stated that 'searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.'" *Id.* at 152-53 (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)).

This border-search power of the government has an "impressive historical pedigree," with the First Congress having authorized a wide range of border-search activities. *Id.* at 153. Today it is DHS, principally through its component agencies CBP and ICE, that is the first line of defense at the border. DHS and CBP have responsibility for administering the customs and immigration laws of the United States, securing the borders, and inspecting individuals and items that seek entry into the United States. See 6 U.S.C. §§ 202, 211. These responsibilities include "[p]reventing the entry of terrorists and the instruments of terrorism into the United States," id. § 202(1), as well as enforcing hundreds of laws and regulations, including those respecting immigration, currency and financial transactions, customs, commerce and trade, copyrights and trademarks, narcotics, the safety of agricultural products and other goods, and import and export controls on wildlife and

[1] Unless otherwise noted, the following alleged facts drawn from the First Amended Complaint are accepted as true solely for the purposes of this motion.

plants, chemical and biological weapons, guns, and other items. *See generally* Summary of Laws Enforced by CBP.

### A. Procedural History

Plaintiff filed this action in December 2025. Compl. (ECF No. 1). Defendants moved to dismiss the Complaint on April 24, 2026. ECF No. 15. On July 2, 2026, Plaintiff filed the First Amended Complaint, which is now the operative pleading. First Am. Compl. ("Am. Compl.") (ECF No. 21).

### B. Plaintiff's Allegations In the First Amended Complaint

Plaintiff is a naturalized U.S. citizen and school superintendent who has family members residing in Nicaragua and who travels internationally several times a year. Am. Compl. ¶¶ 1-2, 16. On July 21, 2025, upon returning from a trip to Nicaragua, Plaintiff was detained by "government agents" at the George Bush Intercontinental Airport in Houston and taken to a secondary screening area. *Id.* ¶¶ 3-4. Plaintiff alleges that officers asked him to provide his laptop, smartphone, and tablet ("Devices"), along with his passwords; that he initially declined; and that he ultimately provided the Devices and passwords. *Id.* ¶¶ 4-5. Plaintiff alleges that the Devices were searched, mainly outside his presence,[2] for a period of time he estimates "at least two hours," and that he "does not know what media or data [the officers] viewed or exported from his devices." *Id.* ¶ 6. The officers returned Plaintiff's devices to him and allowed him to leave. *Id.* The July 21, 2025, encounter was the first time in fifteen years of international travel that Plaintiff had been detained for anything beyond a brief inquiry of his legal status. *Id.* ¶ 3.

[2] Plaintiff alleges that an officer opened and scrolled through one of Plaintiff's cellphone apps in his presence, "but only because it could not be opened without facial recognition." Am. Compl. ¶ 6 n.1.

The First Amended Complaint added allegations about the July 2025 encounter. Plaintiff alleges that officers told him that he had no Fourth Amendment rights at the border and that his refusal to consent was suspicious, that his request to contact his family and lawyer were denied, and that one officer suggested that his refusal to provide his passwords could affect his job. *Id.* ¶¶ 4-5. He also alleges that, in late July 2025, an anonymous email was sent to the members of his school district's Board of School Trustees suggesting a forensic audit of his district-issued devices or a FOIA request to CBP. *Id.* ¶ 7. Plaintiff does not state who sent that email or that any Defendant had any role in it. *See id.*

Plaintiff also alleges that, in response to a Freedom of Information Act ("FOIA") request submitted on his behalf in February 2026, CBP produced two redacted documents, including a "TECS – Electronic Media Report" stating that "a (b)(7)(E) electronic media exam of CHAVARRIA'S electronics was requested" and that the request "was approved by Supervisor." *Id.* ¶ 8. Because the 2018 CBP directive required supervisory approval for "advanced" searches, and because "the specification of search type is redacted," Plaintiff alleges that "it is believed that forensic searches were performed on [his] devices." *Id.* ¶ 10.

Plaintiff alleges that CBP directive 3340-049A authorized the search of his devices, "Border Searches of Electronic Devices" (2018) ("2018 CBP Directive"). *Id.* ¶¶ 23-27. He also challenges a 2009 ICE directive, "Border Searches of Electronic Devices" ("ICE Directive"), which he alleges applies when devices or information are conveyed to ICE. *Id.* ¶ 31-34. Plaintiff continues to allege that "it is not yet known whether ICE Special Agents were involved in [his] July 2025 detention and search of his devices." *Id.* ¶ 31 n.4. The only official Plaintiff identifies by agency is an individual "wearing a CBP badge and introduced to [Plaintiff] as a supervisor," and who gave Plaintiff a CBP brochure. *Id.* ¶ 30.

The First Amended Complaint also challenges CBP 3340-049B, "Border Search of Electronic Devices" (Jan. 2026) ("2026 CBP Directive"), which Plaintiff acknowledges the government regards as having supplanted the 2018 Directive. *Id.* ¶ 35. Plaintiff contends that the 2026 CBP Directive permits advanced searches without individualized reasonable suspicion when there is a national security concern, *id.* ¶ 36; treats certain uses of external equipment as part of a basic search, *id.* ¶ 37; and refers to "HIS policy" for devices conveyed to Homeland Security Investigations, *id.* ¶ 38. Plaintiff does not allege that the 2026 CBP Directive has ever been applied to him. *See generally id.*

Plaintiff alleges that he intends to continue to travel internationally, *id.* ¶ 11, and that the challenged policies "threaten [him] with unreasonable, warrantless searches or seizures whenever he travels internationally," *id.* ¶ 50. He relies on a report stating that CBP conducted "over 46,000" electronic-device searches in 2024. *Id.* ¶ 47 & n.7. Plaintiff alleges that he therefore faces a choice between carrying his devices and risking a search, or leaving them at home, *id.* ¶ 51, and that on four trips to Nicaragua since July 2025 (in October 2025, December 2025, February 2026, and April 2026) he "traveled without any of his electronic devices . . . to avoid an encounter with government agents like that he had experienced in July 2025," *id.* ¶ 52; *see also id.* ¶ 53. Plaintiff does not allege that he was referred to secondary inspection, questioned, or searched on any of those four trips. *See generally id.*

The First Amended Complaint asserts a single claim: that the CBP and ICE policies "embodied in the 2026 CBP Directive, the 2018 CBP Directive, and the ICE Directive" violate the Fourth Amendment and must be set aside under 5 U.S.C. § 706(2)(B), a provision of the Administrative Procedure Act ("APA"). *Id.* ¶¶ 54-59. Plaintiff alleges that the Fourth Amendment requires "a warrant supported by probable cause" before any search of an electronic device at the

border, *id.* ¶ 57, and that no rationale for the border-search exception applies to electronic devices, *id.* ¶ 58. In addition to attorney's fees, Plaintiff seeks the following relief:

> A declaratory judgment, pursuant to 28 U.S.C. § 2201, holding CBP's and ICE's policies Authorizing warrantless, suspicionless searches of U.S. citizens' electronic devices, embodied in the CBP and ICE Directives, and associated promulgating and implementing materials issued by the agencies, unconstitutional;
>
> An order, pursuant to 5 U.S.C. § 706(2), holding unlawful and setting aside the 2026 CBP Directive, the 2018 CBP Directive, and the ICE Directive;
>
> An injunction, pursuant to 28 U.S.C. § 2202, Federal Rule of Civil Procedure 65, and the Court's inherent equitable powers, prohibiting Defendants from performing warrantless searches of Plaintiff's electronic devices[.]

Am. Compl. at Prayer for Relief ¶¶ A-C.

## LEGAL STANDARDS

### I. <u>Rule 12(b)(1)</u>

Rule 12(b)(1) requires dismissal of claims where the Court "lack[s] jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1) presents a threshold challenge to the Court's jurisdiction … [and] the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "A federal court presumptively lacks jurisdiction in a proceeding until a party demonstrates that jurisdiction exists." *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 (D.C. Cir. 1984); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("it is to be presumed that a cause lies outside [the federal courts'] limited jurisdiction . . . ."). "If the Court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

While the Court must accept as true all of the factual allegations in the complaint when reviewing a motion to dismiss under Rule 12(b)(1), *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), because the plaintiff has the burden

of establishing the Court's jurisdiction, the "plaintiff's factual allegation in the complaint … will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (citation and internal quotation marks omitted). This scrutiny permits the Court to consider material outside the pleadings in its effort to determine whether it has jurisdiction. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997).

## II. <u>Rule 12(b)(6)</u>

Under Rule 12(b)(6), the Court may dismiss a complaint where a plaintiff fails to state claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In resolving a motion to dismiss under Rule 12(b)(6), "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The plaintiff receives "the benefit of all inferences that can derived from the fact alleged," but "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by that fact set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F. 3d 1271, 1276 (D.C. Cir. 1994). And "the tenant that a court must accept as true all of the allegations contained in complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Likewise, a court need not "accept as true a legal conclusion couched as factual allegation." *Papasan v. Allain*, 748 U.S. 265, 286 (1986). In addition to the complaint's factual allegations, the Court may consider documents attached to or incorporated by reference in the complaint and matters subject to judicial notice. *See EEOC*, 117 F.3d at 624.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677. The pleading standard Rule 8 announces does not require "detailed factual allegations." *Id.* at 678. A pleading that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557.

## ARGUMENT

### I. <u>This Court Does Not Have Jurisdiction Over Plaintiff's Claim</u>

#### A. Plaintiff Lacks Standing To Seek Forward-Looking Equitable Relief

The standing doctrine addresses who may properly bring suit in a federal court, and "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The "irreducible constitutional minimum" of standing requires a plaintiff to show (1) a concrete and particularized injury in fact which is actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury will likely be redressed by a favorable decision. *Id.* at 560-61. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). The law of standing is built on separation-of-powers principles and, as such, the standing inquiry is "especially rigorous when reaching the merits of the dispute would force [a

court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Bryd*, 521 U.S. 811, 819-20 (1997).

Because Plaintiff requests forward-looking relief, he "must face 'a real and immediate threat of repeated inquiry.'" *Murthy v. Missouri*, 603, U.S. 43, 58 (2024) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)); see also *Jibril v. Mayorkas*, 20 F.4th 804, 814 (D.C. Cir. 2021). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." *O'Shea*, 414 U.S. at 495-96; *accord City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). A threatened injury "must be certainly impending to constitute injury in fact," and "allegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (cleaned up); see also id. at 414 (noting that standing may in some cases rest on a "substantial risk" that the harm will occur). Plaintiff cannot meet that standard.

1. <u>A single past search does not establish standing to seek prospective relief</u>

Plaintiff seeks equitable relief (a declaratory judgment, vacatur, and a permanent injunction) on the premise that the government violated the Fourth Amendment by searching his Devices at the border. Am. Compl. ¶¶ 54 -59 & Prayer for Relief. But any concrete injury alleged by Plaintiff occurred at the time of the July 2025 search. The remaining purported injuries (fears regarding the safety student data, concerns about future travel, and Plaintiff's decision to leave his devices at home) are speculative or self-inflicted and do not establish that Plaintiff will be subject to a similar search in the future. Because Plaintiff has not plausibly alleged an ongoing injury or a "real and immediate threat of repeated injury" traceable to the challenged policies, he lacks standing to seek the declaratory and injunctive relief he requests. *Murthy*, 603 U.S. at 58.

In *Lyons*, the Supreme Court considered whether a plaintiff subjected to a chokehold by police had standing to seek equitable relief in form of (i) a declaration that the use of such

chokeholds violated the Constitution and (ii) an injunction against their future use. 461 U.S. at 98. The Court explained that the plaintiff would have standing only if he could show that he "would again be stopped for a traffic or other violation in the reasonably near future" and "that strangleholds are applied by the Los Angeles police to every citizen who is stopped and arrested regardless of the conduct of the person stopped." *Id.* at 108. Noting that the plaintiff did not claim to have been subjected to a chokehold on any other occasion, the Court found that the "odds" of a repeat occurrence of the allegedly illegal conduct were not "sufficient to make out a federal case for equitable relief." *Id.*

The same is true here. Plaintiff alleges that he has traveled internationally "multiple times per year for the past fifteen years," Am. Compl. ¶ 2, and that the July 2025 encounter was the only time in that period he was detained for anything beyond a brief check of status, *id.* ¶ 3. Plaintiff thus alleges that his devices were searched on a single occasion. *Id.* ¶¶ 4-6. Having failed to plausibly allege recurring injuries, Plaintiff lacks standing for the equitable relief he seeks. *See Murthy*, 603 U.S. at 69 (without "proof of an ongoing pressure campaign," it was "entirely speculative" that future injury would be attributable to defendants); *Jibril*, 20 F.4th at 812 ("[B]ecause the Jibrils do not plausibly allege that these alleged violations will recur, Appellants fail to establish any imminent injuries with respect to these purported policy violations.").

The new allegations in the First Amended Complaint do not change this analysis. Plaintiff's allegations about the conduct of individual officers during the July 2025 encounter (the length of his detention, statements officers made, and the denial of his requests to contact a family and counsel), Am. Compl. ¶¶ 4-5, describe past events. They say nothing about whether plaintiff faces a real and immediate threat of a future device search. Nor does Plaintiff challenge any policy governing those matters; the only policies at issue are the Directives. *See id.* ¶¶ 54-59. Plaintiff's

allegation, on information and belief, that an advanced search may have been performed, id. ¶¶ 8-10, likewise concerns only the past search: whatever type of search occurred in July 2025, it does not make a future search likely. And the anonymous email to Plaintiff's school board, *id.* ¶ 7, cannot support standing at all. Plaintiff does not allege that any Defendant was involved, and an injury that results from "the independent action of some third party not before the court" is not fairly traceable to the defendant. *Lujan*, 504 U.S. at 560 (cleaned up). Nor would any relief directed at the Directives redress it.

2. Plaintiff has not plausibly alleged a substantial risk that his devices will be searched again.

A similarly situated plaintiff was found to lack standing to pursue litigation arising out of a border search in *Abidor v. Napolitano*, 990 F. Supp. 2d 260 (E.D.N.Y 2013). In that case, the plaintiff had his electronic devices searched by a customs officer when returning to the United States from abroad. *Id.* at 267-68. The plaintiff later sued various government officials seeking purely equitable relief, including a declaration that his rights had been violated, an injunction against copying the information from his devices, and expungement of the information from the government's possessions. *Id.* at 264, 275.

In dismissing the plaintiff's claims for lack of standing, the court in *Abidor* employed reasoning that equally applies. The court took judicial notice that "there is less than one in a million chance that a computer carried by an inbound international traveler will be detained" at customs *Id.* at 271; see also *United States v. Ickes*, 393 F.3d 501, 506-07 (4th Cir. 2005) (rejecting as "far-fetched" the suggestion that "any person carrying a laptop computer … on an international flight would be subject to a search of the files on the computer hard drive," because "[c]ustoms agents have neither the time nor the resources to search the contents of every computer"). Given these low odds, there was at most only an "alleged injury based on speculation as to conduct which may

or may not occur at some specified future date," which was insufficient to support an action in federal court. *Abidor*, 990 F. Supp. 2d at 272. The court added that the plaintiff had frequently traveled internationally and had been stopped at the border on other occasions, but that his electronic devices had been searched only once. *Id.* at 274-75. The same is true of Plaintiff here, according to his own allegations. Am. Compl. ¶¶ 2-3.

Plaintiff's own allegations confirm that the risk of a future search is remote. Plaintiff relies on a report stating that CBP conducted "over 46,000" electronic-device searches in 2024. Am. Compl. ¶ 47. That same report, which the First Amended Complaint incorporates by reference, states that only about 20 percent of searched devices belonged to U.S. citizens and that only about 10 percent of all searches were advanced searches. Kyle Sweetland et al., *Searches of Electronic Devices at Ports of Entry* (Pac. Legal Found. Dec. 2025), https://pacificlegal.org/wp-content/uploads/2025/12/SR-1299-Sweetland-Peikoff-and-Scacchi-Policy-Explainer-Searches-of-Electronic-Devices-at-Ports-of-Entry.pdf. Those figures must be measured against the hundreds of millions of international travelers CBP processes each year. *See* CBP, *CBP Releases Updated Border Search of Electronic Device Directive and FY17 Statistics* (Jan. 5, 2018), (approximately 0.007 percent of the more than 397 million arriving international travelers processed by CBP officers in fiscal year 2017 had their electronic devices searched); *Cannon v. District of Columbia*, 717 F.3d 200, 205 (D.C. Cir. 2013) (courts may take judicial notice of information posted on official websites of government agencies). According to Plaintiff's own numbers, a U.S. citizen's chance of having his devices searched on any given trip is a small fraction of one percent, and the chance of an advanced search is smaller still. That is not a "substantial risk," much less a "certainly impending" injury. *Clapper*, 568 U.S. at 409, 414.

Plaintiff's theory that he could be subjected to a suspicionless advanced search under the 2026 CBP Directive's national-security provision, Am. Compl. ¶ 36, is more speculative still. Plaintiff alleges no facts suggesting that he would ever present a national security concern. And while Plaintiff alleges that he has traveled to Nicaragua four more times since the July 2025 search, he does not allege that he was referred to secondary inspection or questioned on any of those trips. *Id.* ¶ 52.

3. Plaintiff's decision to travel without his devices is a self-inflicted harm that cannot confer standing

Unable to allege a likely future search, Plaintiff relies on his own decision to travel without his Devices on four trips since July 2025 and the resulting inconvenience of being unable to work remotely. Am. Compl. ¶¶ 51-53. That choice cannot supply standing. In *Clapper*, the Plaintiffs alleged that they had incurred costs and undertaken burdensome measures to protect the confidentiality of their communications because they feared surveillance under the challenged statute. 568 U.S. at 415-16. The Supreme Court held that such plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416. "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear." *Id.* Nor can a plaintiff establish standing through "[a]llegations of a subjective 'chill,'" which "are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Id. at 418 (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)).

So too here. Plaintiff's decision to leave his Devices at home is a response to his fear that he might again be selected for a device search. Because that fear is not grounded in an impending, or even substantial, risk of a future search, *see supra* Part I.A.2, the costs Plaintiff has chosen to

incur to avoid it are not cognizable injuries. *Clapper*, 568 U.S. at 416. Plaintiff cannot convert a single past search into standing to challenge the Directives prospectively by electing to change his travel habits.

4. Equitable considerations independently counsel against the relief Plaintiff seeks.

Moreover, even if Plaintiff could establish Article III standing, dismissal would still be warranted for closely related equitable reasons. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest. It is always the duty of a court of equity to strike a proper balance between the needs to the plaintiff and the consequences of giving the desired relief." *Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426, 431 (1948) (citations omitted). Thus "[e]specially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative." *Id.*; *see also Abidor*, 990 F. Supp. 2d at 274 ("'The Supreme Court has frequently, although not invariably, indicated a marked reluctance to have important issues of public law resolved by declaratory judgments.'" (quoting 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2762 (3d ed. 1998)).

Plaintiff seeks a judgment from this Court that the Constitution requires the government to obtain a warrant supported by probable cause before searching an electronic device at the border. *See* Am. Compl. ¶¶ 57-59 & Prayer for Relief. As discussed below, neither the Supreme Court nor any court of appeals has recognized such a requirement. Plaintiff therefore cannot show a "clear" need for the relief he seeks, *Eccles*, 333 U.S. at 431, and granting it would represent a marked departure from the longstanding principles that the government's border-search authority is broad and that border searches are reasonable simply because they occur at the border. Furthermore, while in some instances it may be necessary for a court to address the legality of a border search

(such as in a criminal prosecution where a defendant's liberty may hinge on whether evidence discovered during a border search of an electronic device is suppressed), Plaintiff's complaint does not present such a case. *See Abidor*, 990 F. Supp. 2d at 272 (contrasting a claim for a declaratory judgement regarding the legality of a border search, for which standing was lacking, with that same issue being raised in a criminal case in the context of a motion to suppress).

In addition, as the *Abidor* court noted, declining to exercise discretionary equitable jurisdiction over a suit like Plaintiff's affords Congress and the relevant Executive Branch agencies the first opportunity to "respond to any abuses that should develop as a consequence" of government policies providing for border searches of electronic devices. *Id.* at 274. As the current CBP border-search policy makes clear, "CBP will protect the rights of individuals against unreasonable search and seizure and ensure privacy protections while accomplishing its enforcement mission."[3] Congress is likewise aware that electronic devices are subject to being searched at the border but has not seen fit to withdraw or modify the broad search authority that it has consistently granted to government officers at the border for well over 200 years (including at the time the Fourth Amendment was adopted). *See Abidor*, 990 F. Supp. 2d. at 274 (referencing a congressional report on border searches of electronic devices); *see also* Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, § 802 (2016), codified at 6 U.S.C. § 211(k)(1)(A) (directing CBP to establish "standard operating procedures for searching, reviewing, retaining, and sharing information contained in communication, electronic, and digital devices encountered by [CBP] personnel at United States ports of entry").

---

[3] 2026 Directive, available at https://www.cbp.gov/sites/default/files/2026-01/cbp_directive_3340-049b_jan_2026_508.pdf (last visited Sep. 27, 2026); see Am. Compl. ¶ 35.

In sum, under Article III's case-or-controversy requirement, the First Amended Complaint is subject to dismissal for lack of standing.

### B. Plaintiff Does Not Allege That ICE Injured Him And Therefore Lacks Standing To Sue ICE

The First Amended Complaint still does not plausibly allege that ICE caused Plaintiff any injury, much less one that would be redressable by recission of the ICE Directive. The only allegations specific to ICE are that ICE "is responsible for policies and procedures governing the conduct of ICE Special Agents," Am. Compl. ¶ 19; that the CBP directives contemplate "conveyance to ICE" of devices or information, after which ICE (or "HIS") policy applies, *id.* ¶¶ 31, 38; and that the ICE Directive authorizes border searches of electronic devices, *id.* ¶¶ 32-34. Plaintiff continues to concede that "it is not yet known whether ICE Special Agents were involved in [his] July 2025 detention and search of his devices." *Id.* ¶ 31.

Plaintiff's new allegations point only to CBP. The documents Plaintiff obtained through FOIA are CBP records: a "U.S. Customs and Border Protection ... TECS – Electronic Media Report" and email forwarded by the "Watch Commander, Area Port of Houston – Airports." *Id.* ¶ 8. The only official Plaintiff identifies by agency was "wearing a CBP badge." *Id.* ¶ 30. Plaintiff does not allege that his devices or any information from them were ever conveyed to ICE. Plaintiff's assertion that the ICE Directive "could impact [him] during his future travels," *id.* ¶ 31, is precisely the sort of conjectural and hypothetical injury that does not satisfy Article III. *Lujan*, 504 U.S. at 560; *Clapper*, 568 U.S. at 409. Plaintiff's claims against ICE and its Senior Official should be dismissed for lack of standing.

### C. Plaintiff Lacks Standing Because The Requested Relief Would Not Redress The Alleged Injuries

The party invoking federal jurisdiction bears the burden of establishing the elements of standing: injury-in-fact, causation, redressability. *See Stilwell*, 569 F.3d at 518. Because these are

not merely pleading requirements, but "rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff's bears the burden of proof." *Lujan*, 504 U.S. at 561. Plaintiff must therefore show that it is "likely, as opposed to merely speculative, that the [alleged] injury will be redressed by a favorable decision." *Id.* (citation omitted). A plaintiff cannot make this showing when the record fails to establish that the requested relief would result in a different outcome. *See Scenic Am., Inc. v. Dep't of Transp.*, 836 F.3d 42, 50-53 (D.C. Cir. 2016) (declining to rely on outcomes that were "speculative" rather than "likely" and holding that vacating the guidance was unlikely to redress plaintiff's injuries). If a court lacks the authority to grant the relief requested, a plaintiff's injuries are not redressable. *See CREW v. Trump*, 438 F. Supp. 3d 54, 69 (D.D.C. 2020) (citing *Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992), and *Swan v. Clinton*, 100 F.3d 973, 980-81 (D.C. Cir. 1996)).

Even if Plaintiff were to prevail on the merits and the Court were inclined to vacate the 2026 CBP Directive, the 2018 CBP Directive, or the ICE Directive, the injury Plaintiff alleges (the possibility of a warrantless search of his devices at the border) would not be redressed, because the Directives are not the source of the government's authority to perform such searches. Since the beginning of our Government, Congress "has granted the Executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant." *Flores-Montano*, 541 U.S. at 153 (quoting *United States v. Montonya de Hernandez*, 473 U.S. 531, 537 (1985)). Indeed, the government conducted border searches of electronic devices before the first of these directives was issued in 2009. See, e.g., *United States v. Pickett*, 598 F.3d 231, 233-35 (5th Cir. 2010) (2007 border search of thumb drives, portable hard drives, and laptop memory card); *United States v. Arnold*, 533 F.3d 1003, 1005, 1008 (9th Cir. 2008) (2005 border search of laptop, separate hard drive, flash drive, and six CDs); *United States v. McAuley*, 563 F. Supp. 2d 672, 673-74, 677

(W.D. Tex. 2008) (2007 border search of laptop and hard drives). Vacating the Directives would not impose the warrant requirement Plaintiff seeks; it would simply eliminate the internal limits the Directives place on border searches of electronic devices, such as the requirements of reasonable suspicion or a national security concern, and supervisory approval, for advanced searches. *See* Am. Compl. ¶¶ 25, 36.

Because vacatur and the other relief Plaintiff requests would not remedy his alleged injuries, the First Amended Complaint should be dismissed for lack of standing.

### D. Plaintiff's Challenge To The 2018 CBP Directive Is Moot, And He Lacks Standing to Challenge The 2026 CBP Directive

In January of 2026, CBP adopted a new policy, CBP Directive 3340-049B, "Border Search of Electronic Devices." *See* Am. Compl. ¶ 35. The 2026 CBP Directive supersede the 2018 CBP Directive that was operative at the time of Plaintiff's search, as Plaintiff acknowledges. *Id.* ("The government takes the position that the 2026 CBP Directive supplants the 2018 Directive.").

Plaintiff's challenge to the 2018 CBP Directive is therefore moot. A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 105-06 (D.C. Cir. 2016) (citation omitted). When a challenged agency rule or policy has been superseded, a court "can do nothing to affect [the plaintiff's] rights relative to it, thus making [the] case classically moot for lack of a live controversy." *Id.* at 106; *see also Nat'l Mining Ass'n v. Dep't of Interior*, 251 F.3d 1007, 1010-11 (D.C. Cir. 2001) (challenge to superseded regulations moot where any opinion regarding the former rules would be merely advisory); *Sayad v. Dep't of Homeland Sec.*, Civ. A. No. 20-2333 (TSC), 2022 WL 4130840, at * 2 (D.D.C. Sep. 12, 2022) (dismissing claims as moot once the challenged agency action had been completed, because "there is no 'live' dispute as to those allegations"). Plaintiff's request that the Court "set aside" the 2018 CBP Directive, Am.

Compl. at Prayer for Relief ¶ B, seeks relief the Court cannot meaningfully grant and a declaration regarding a policy that no longer governs would be purely advisory. [4]

Plaintiff's attempt to cure this defect by adding a challenge to the 2026 CBP Directive fails for an independent reason: Plaintiff has never been subjected to it. Standing must be established "for each claim" and "for each form of relief." *TransUnion*, 594 U.S. at 431. The July 2025 search was conducted under the 2018 CBP Directive, *see* Am. Compl. ¶¶ 10, 23, and Plaintiff does not allege any encounter with CBP since the 2026 CBP Directive took effect. Plaintiff's challenge to the 2026 CBP Directive, including the provisions he contends differ from the 2018 CBP Directive, *id.* ¶¶ 36-38, thus rests entirely on the possibility of a future search, which is too speculative to support standing for the reasons set out above. *See supra* Part I.A. Accordingly, the Court should dismiss Plaintiff's challenge to the 2018 CBP Directive as moot and his challenge to the 2026 CBP Directive for a lack of standing under Rule 12(b)(1).

## II. <u>Plaintiff Has Not Stated A Claim For Violation Of The Fourth Amendment</u>

### A. Border Searches of Electronic Devices Require Neither A Warrant Nor Probable Cause

Plaintiff alleges that the Directives violate the Fourth Amendment because they permit searches of electronic devices at the border without "a warrant supported by probable cause." Am. Compl. ¶ 57. That theory fails to state a claim. The Fourth Amendment requires only "that searches and seizures be reasonable." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). "[T]he Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior." *Id.* at 538; see also *Abdellatif v. DHS*, 109 F.4th 562,

[4] The 2009 ICE Directive challenged in the First Amended Complaint was also affected by guidance issued in 2018. *See Anibowei v. Mayorkas*, No. 3:16-CV-3495-D (N.D. Tex. Nov. 22, 2024), ECF No. 125.

572-73 (D.C. Cir. 2024) (discussing the reduced threshold for conducting searches at the border in the context of a Fourth Amendment challenge to petitioners' alleged watchlist status). "[T]he United States, as sovereign, has the authority to protect, and a paramount interest in protecting, its territorial integrity." *Flores-Montano*, 541 U.S. at 153. Indeed, the Supreme Court has stressed that "[t]he Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border." *Id.* at 152. For this reason, it has long been acknowledged that "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by the virtue of the fact that they occur at the border." *Id.* at 152-53 (quoting *Ramsey*, 431 U.S. at 616). The border-search doctrine, which permits suspicionless searches and things crossing the border, has a history as old as the Fourth Amendment itself. *See id.* at 153. (citing a statute authorizing border searches passed by the First Congress and explaining that the government's authority to conduct warrantless searches has an "impressive historical pedigree").

As the Supreme Court has held, "[r]outine searches of the persons and effects of entrants [into the United States] are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *Montoya de Hernandez*, 473 U.S. at 538. The only exception the Court has suggested exists is for narrow category of personal searches, "such as a strip, body-cavity, or involuntary x-ray searches," that are considered non-routine and for which reasonable suspicion may be required. *Flores-Montano*, 541 U.S. at 152 (quoting *Montoya de Hernandez*, 473 U.S. at 541); *see also Ahmed v. Kable*, Civ. A. No. 21-3333 (TJK), 2023 WL 6215024, at *16 (D.D.C. Sep. 25, 2023) (searched alleged by plaintiff "pales in comparison to the types the Supreme Court has identified as nonroutine"); *United States v. Sandler*, 644 F.2d 1163, 1167-68 (5th Cir. 1981) (while reasonable suspicion may be required for a strip or body-cavity searches at the border, it is not

required for less intrusive personal searches such as patdowns or frisks). The Second Circuit, in a recent decision addressing border searches of cellphones, likewise explained that "the label 'non-routine' should generally be reserved for intrusive border searches of the person (such as body-cavity searches or strip searches), not belongings," *United States v. Alisigwe*, No. 24-960, 2026 WL 2751713, at *7 (2d Cir. Sept. 17, 2026) (quoting *United States v. Levy*, 803 F.3d 120, 123 n.3 (2d Cir. 2015)). The Supreme Court has expressly left open "what level of suspicion, if any, is required for nonroutine border searches such as strip, body cavity, or involuntary x-ray searches." *Montonya de Hernandez*, 473 U.S. at 541 n.4. And the one nonroutine intrusion the Court has addressed, the prolonged detention of a traveler suspected of smuggling contraband in her digestive tract, it held justified by reasonable suspicion alone. *Id.* at 541

Plaintiff has not alleged that he was subjected to any search of his person, and the Supreme Court has rejected attempts to extend the reasonable-suspicion requirement beyond the category of "highly intrusive searches of the person." *Flores-Montano*, 541 U.S. at 152. In *Flores-Montano*, customs officers removed and dismantled the gas tank of a car entering the country, leading to discovery of narcotics inside. *Id.* at 150-51. Reversing a decision of the Ninth Circuit that had required reasonable suspicion on the theory that the search was not "routine," search of a vehicle, as opposed to a more 'intrusive' search of a person, have no place in border searches of vehicles." *Id.* at 152.

Plaintiff now alleges, based on inferences from redacted FOIA requests, that "it is believed that forensic searches were performed on [his] devices." Am. Compl. ¶ 10. That allegation is speculative. The document that Plaintiff quotes refers only to an "electronic media exam" that was "requested" and "approved by Supervisor," id. ¶ 8, and Plaintiff's inference about the type of examination depends on the content of redacted text. Allegations that are "merely consistent with"

a plaintiff's theory are not enough. *Twombly*, 550 U.S. at 557. But the allegation makes no difference in any event. By Plaintiff's own account, the examination was approved by a supervisor, Am. Compl. ¶ 8, which is precisely the safeguard the 2018 CBP Directive required for advanced searches, together with reasonable suspicion or a national security concern. 2018 CBP Directive § 5.1.4; Am. Compl. ¶ 25. Plaintiff does not allege that the officers lacked reasonable suspicion. His claim is instead that every border search of an electronic device, basic or advanced, requires a warrant supported by probable cause. Am. Compl. ¶ 57. No court of appeals has adopted that rule.

The D.C. Circuit has not specifically considered border searches of electronic devices. The one decision in this District to address such a search, *United States v. Kim*, 103 F. Supp. 3d 32, 59 (D.D.C. 2015), does not help Plaintiff. In Kim, the court held that forensic search of a laptop, conducted to gather evidence in a pre-existing investigation, was supported by "so little suspicion" and was so disconnected from the considerations underpinning the border-search authority that it was unreasonable. *Id.* at 59. But *Kim* turned on a combination of unusual circumstances, none of which are present here: the traveler was leaving the country, not entering it;[5] the laptop was seized and transported approximately 150 miles from the border, where its contents were copied; agents reviewed the extracted information over a period of weeks; and the government obtained a warrant only after the initial search. *Id.* at 57-59. The Court expressly declined to answer "the question of whether and when reasonable suspicion would be constitutionally required," or to "articulate a

---

[5] Despite *Kim*'s skepticism of outbound border searches, every circuit to consider the issue has found that the border-search authority extends to property leaving the country. *See United States v. Odutayo*, 406 F.3d 386, 391-92 (5th Cir. 2005); *United States v. Boumelhem*, 339 F.3d 414, 422-23 (6th Cir. 2003); *United States v. Oriakhi*, 57 F.3d 1290, 1296-97 (4th Cir. 1995); *United States v. Ezeiraku*, 936 F.2d 136, 143 (3rd Cir. 1991); *United States v. Cardona*, 769 F.2d 625, 629 (9th Cir. 1985); *United States v. Udofot*, 711 F.2d 831, 839-40 (8th Cir. 1983). In any event, the search here was of an inbound traveler, where the government's interest "is at its zenith." *Flores-Montano*, 541 U.S. at 152.

broad rule of general applicability to future searches of electronic media." Id. at 53. And, importantly, *Kim* did not hold that a warrant or probable cause is required for border searches of electronic devices. *See generally id.* Plaintiff by contrast, alleges an inbound search conducted at the port of entry on the day he arrived, after which his Devices were returned to him and he was allowed to leave. Am. Compl. ¶¶ 3-6.

The D.C. Circuit and district courts in this Circuit (which does not contain a port of entry) do not appear to have considered this issue specifically. However, the D.C. Circuit has addressed border searches generally in connection with its dismissal of a challenge to the Transportation Security Administration's ("TSA") treatment of a petition by a traveler who suspected that he was on a TSA watchlist. *Abdellatif*, 109 F.4th 562. In rejecting the petitioners' Fourth Amendment claims (which were not pleaded in much detail), the court discussed border searches and *Montoya de Hernandez* and stated that "[r]outine searches at the border, absent suspicion, thus are permissible 'simply by the virtue of the fact that they occur at the border.'" *Id.* at 572 (citation omitted). The court found that "[w]hile not every border search or seizure fits within that rubric, nothing in petitioners' unspecific allegations that they have experienced secondary inspections, even ones lasting more than an hour, causes us to question the application of the general principle here." *Id.*[6]

Courts in other circuits have considered questions similar to the ones Plaintiff raises. The Fifth Circuit, where the search at issue has occurred, has held that the government can conduct routine, manual cell phone searches at the border without reasonable suspicion. *United States v.*

[6] Given the vague allegations in the case, the court of appeals cautioned that its decision was limited. *Abdellatif*, 109 F.4th at 573 ("We only conclude that airport security inspections as described in the government's declarations, or interviews at the border of reasonable length and conducted in good faith, do not offend the Fourth Amendment.").

*Castillo*, 70 F.4th 894, 898 (5th Cir. 2023). In *Malik v. DHS*, the Fifth Circuit recognized that reasonable suspicion was the highest standard that might apply even if a cell phone search were considered "non-routine." 78 F.4th 191, 201 (5th Cir. 2023) ("Here, however, we need not decide whether the search was routine versus non-routine. That is because reasonable suspicion was present. Reasonable suspicion requires only a 'minimal level of objective justification that consists of more than inchoate or unparticularized suspicion or hunch.' DHS met that 'low threshold' here."); see *Anibowei v. Bondi*, No. 24-11042, 2025 WL 3231720, at *2 (5th Cir. Nov. 19, 2025) (affirming dismissal of APA claim challenging CBP's 2009 and 2018 directives on border searches of electronic devices), *petition for cert. filed sub. Nom. Anibowei v. Blanche*, No. 26-208 (U.S. Aug. 14, 2026).

The other circuits that have addressed the issue have likewise held that border searches of electronic devices require neither a warrant nor probable cause, and that basic or manual searches may be conducted without any suspicion. *Alasaad v. Mayorkas*, 988 F.3d 8, 18 (1st Cir. 2021) (border searches of electronic devices do not require a warrant or probable cause); *id.* at 19 ("[B]asic border searches are routine searches and need not be supported by reasonable suspicion."); *United States v. Alisigwe*, No. 24-960, 2026 WL 2751713 (2d. Cir. 2026) (concluding that no suspicion is required before the government manually searches a traveler's cellphone at the border); *Ickes*, 393 F.3d at 505-07 (upholding border search of traveler's computer and disks); *United States v. Kolsuz*, 890 F.3d 133, 146 (4th Cir. 2018) (describing *Ickes* as "treat[ing] a [manual] search of a computer as a routine border search, requiring no individualized suspicion"); *United States v. Mendez*, 103 F.4th 1303, 1310 (7th Cir. 2024) (searches of electronic devices at the border do not require a warrant or probable cause, and manual searches are "routine" border searches that do not require individualized suspicion); *United States v. Cano*, 934 F.3d 1002, 1016

(9th Cir. 2019) ("[W]e hold that manual searches of cell phones at the border are reasonable without individualized suspicion, whereas the forensic examination of a cell phone requires a showing of reasonable suspicion."); *United States v. Pulido*, 133 F.4th 1256, 1275 (11th Cir. 2025) ("Because our precedents in the border-search context state both (1) that we require reasonable suspicion only for highly intrusive searches of a person's body and (2) that forensic searches of electronic devices don't require any level of suspicion, we affirm the district court's holding that the government's search of Pulido's iPhone and MacBook didn't violate the Fourth Amendment.") (citing *United States v. Touset*, 890 F.3d 1227 (11th Cir. 2018)). The circuit courts have only differed as to whether some level of individualized suspicion is required for forensic searches. *Compare, e.g., United States v. Touset,* 890 F.3d 1227, 1231 (11th Cir. 2018) ("Fourth Amendment does not require any suspicion for forensic searches of electronic devices at the border"), *with Cano*, 934 F.3d at 1016 (holding "the forensic examination of a cell phone requires a showing of reasonable suspicion"), and U*nited States v. Kolsuz*, 890 F.3d 133 (4th Cir 2018) (holding "a forensic border search of a phone must be treated as nonroutine, permissible only on a showing of individualized suspicion").

**B. Plaintiff's Contention That The Border-Search Exception Does Not Reach Electronic Devices Is Contrary to Precedent**

Plaintiff's contention that none of the rationales for the border-search exception applies to electronic devices, Am. Compl. ¶¶ 39-41, 58, does not change the analysis. Relying on academic commentary, Plaintiff reasons that electronic devices cannot hold tariffable goods or conceal a person seeking to enter unlawfully, and because digital contraband can also be transmitted over the internet, the traditional border-search rules do not apply to them. *Id.* ¶ 58 (citing Orin Kerr, *The Digital Fourth Amendment: Privacy in Our Online World* 122-23 (2025)).

But the Supreme Court has never confined the border-search exception to dutiable goods or persons. The exception rests on "the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country," *Ramsey*, 431 U.S. at 616, and on the government's interest "in preventing the entry of unwanted persons and effects," *Flores-Montano*, 541 U.S. at 152. *Ramsey* itself upheld the warrantless opening of international mail (envelopes that could contain letters and other papers), explaining that "there is nothing in the rationale behind the border-search exception which suggests that the mode of entry will be critical." 431 U.S. at 620. Courts of appeals have likewise recognized that the government's interest in preventing contraband from crossing the border extends into digital contraband, such as child pornography, whether it is carried on paper or on a device, and that border searches of electronic devices may be used to look for evidence of contraband or cross-border crime. See *Touset*, 890 F.3d at 1233-35; *Alasaad*, 988 F.3d at 19; *Alisigwe*, 2026 WL 2751713, at *13. Plaintiff's argument that digital contraband could also enter the country by other means does not diminish the sovereign's interest in intercepting it when it physically crosses the border. Kerr's commentary, however thoughtful cannot displace the Supreme Court's border-search precedents or the uniform holdings of the courts of appeals that no warrant or probable cause is required. *See supra* Part II. A.

**C. The Directives Are Consistent With The Governing Case Law**

The CBP Directives challenged in this case reflect the standards these courts have adopted for border searches of electronic devices. Under both the 2018 and the 2026 CBP Directives, CBP officers may conduct a basic search "with or without suspicion." 2018 CBP Directive § 5.1.3; 2026 CBP Directive § 5.1.3. Under the 2018 CBP Directive, CBP officers could conduct an advanced search if "there [was] reasonable suspicion of activity in violation of the laws enforced or administered by CBP, or in which there is a national security concern," and only with supervisory

approval. 2018 CBP Directive § 5.1.4. Under the 2026 CBP Directive, officers may conduct advanced searches "only in instances in which there is reasonable suspicion of activity in violation of the laws enforced or administered by CBP or, in the absence of individualized suspicion when there is a national security concern." 2026 CBP Directive § 5.1.4. Such advanced searches require supervisory approval and, in the case of advanced searches without reasonable suspicion for purposes of national security, approval from the Director, Field Operations; Chief Patrol Agent; Director Air Operations; Director Marine Operations; Special Agent in Charge; or their delegate. *Id.* The ICE Directive provides that "ICE Special Agents acting under border search authority may search, detain, seize, retain, and share electronic devices or information contained therein, with or without individualized suspicion, consistent with the guidelines and applicable laws set forth herein," which is also in keeping with the case law discussed above. ICE Directive § 6.1.

Plaintiff's objections to particular provisions of the 2026 CBP Directive (that it permits advanced searches based on a national security concern without individualized reasonable suspicion, and that it treats certain uses of external equipment, such as to bypass a password or charge a device, as part of a basic search, Am. Compl. ¶¶ 36-37) do not state a claim either. Plaintiff does not allege that either provision has been applied to him. More fundamentally, Plaintiff's claim does not depend on where the line between basic and advanced searches is drawn or on what level of suspicion is required for an advanced search: he contends that every border search of an electronic device requires a warrant supported by probable cause. *Id.* ¶ 57. As shown above, that contention is contrary to the uniform weight of appellate authority, and at least one circuit requires no suspicion even for forensic searches. *See Pulido*, 133 F.4th at 1275; *Touset*, 890 F.3d at 1231.

Under the border-search doctrine, the search of an electronic device at the border is reasonable, and does not offend the Constitution, because it occurs at the border. Thus, Plaintiff's Fourth Amendment claim should be dismissed for failure to state a claim.

* * *

## CONCLUSION

For these reasons, the First Amended Complaint should be dismissed. Given Plaintiff has already amended his complaint once with the benefit of Defendant's prior motion to dismiss and because his Fourth Amendment theory fails as a matter of law, dismissal under Rule 12(b)(6) should be with prejudice.

Dated: September 30, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *\/s/ Danielle D. Peraza*

DANIELLE D. PERAZA, DC Bar
No. 900938597
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
202 - 252 - 7246

*Attorneys for the United States of America*